## Frank Giddey v. Ida Altman.

*Contract construed : Right of possession.* A contract for the sale of a piano upon condition of the delivery by the purchaser to the vendor in payment therefor of certain tickets of subscription for a newspaper and to a premium drawing, the vendee agreeing to repurchase, at a price specified, all such tickets that remained unsold after a day named, and the vendor to use reasonable exertion to sell the same in the meantime, which provides that the piano "is to remain the property of the vendor and subject to his directions, and not to be moved from place to place without his written assent until all of the conditions herein specified are fulfilled;" and that in case of default in any of the conditions, the vendor "may declare this agreement void and take possession of the piano wherever found, without legal process, and retain payments made, as damages for non-performance," etc., does not give the vendor the right of possession until he has exercised his right to declare the contract of sale terminated; and his tendering the tickets back, and on payment being refused, putting them into the hands of an attorney for collection, could not operate to give him the right of possession.

*Replevin : Right of possession : Title.* In an action of replevin by one claiming under the vendees in such contract against vendor's agent, who had taken possession without a previous demand, the judgment below in favor of the plaintiff will not be disturbed, because of a ruling that this contract transferred the title to the vendees, in the absence of any showing that the vendor had taken any steps to declare the contract void, whether the ruling be correct or not.

*Heard April 25.    Decided April 29.*

Error to Wayne Circuit.

*Moore & Griffin*, for plaintiff in error.

*H. L. Baker* and *Theodore Romeyn*, for defendant in error.

COOLEY, J.

On the eighth day of December, 1871, the following instrument was executed by the parties therein named:

"This agreement, made and entered into this eighth day of December, A. D. 1871, between Fletcher Benedict, of the city of Pontiac, in the county of Oakland, in the state of Michigan, and C. W. Armstrong & Co., of the city of Detroit, county of Wayne, and state of Michigan, witnesseth: that whereas, the said C. W. Armstrong & Co. have this day agreed to purchase from the said Fletcher Benedict one piano-forte, of the manufacture of G. A. Miller & Co., Boston, Mass., No. 5, upon the terms and conditions following:

"The said C. W. Armstrong & Co., in payment for said piano, hereby deliver and transfer to the said Fletcher Benedict four hundred subscription tickets for the newspaper known and published in the city of Detroit as *Our Mutual Friend*, together with the premiums drawn by said tickets, on the day such distribution shall take place; and we, the said C. W. Armstrong & Co., hereby agree and obligate ourselves, for and in consideration of the premises, to repurchase from said Fletcher Benedict, paying therefor the sum of one dollar and seventy-five cents each, in cash, all the tickets that shall remain in the hands of the said Fletcher Benedict, not disposed of and unsold, of said four hundred tickets, on the fifth day of March, A. D. 1872. And it is hereby further agreed by the said Fletcher Benedict, that he shall use all reasonable exertion and diligence to sell and dispose of said subscription tickets; it being expressly understood and agreed that the said instrument is to remain the property of the said F. Benedict, and subject to his directions, and not to be moved from place to place without his written assent until all the conditions herein

specified are fulfilled. It is further agreed in case of default in any of the conditions above stipulated to be performed, that the said F. Benedict may declare this agreement void, and take possession of the said instrument wherever it may be found, without legal process, and the payments that shall have been made may be retained to apply as damages for the non-performance of this agreement. I also agree to have this said instrument fully insured for the benefit of said F. Benedict, and that the policy will remain in his hands until the instrument is fully settled for."

Armstrong took possession of the piano as contemplated by this instrument, and afterwards, but at what precise time does not appear, sold it to one Beard, who, in May, 1872, sold it to Mrs. Altman. It is not disputed that Mrs. Altman bought in good faith, and without knowledge or suspicion that Beard's title was defective.

Benedict did not succeed in selling more than ten or twelve of the tickets he received from Armstrong & Co., and it is claimed by him that on the fifth of March, 1872, he tendered back to Armstrong the unsold tickets; and that the latter refused to take them. Benedict then left the tickets with an attorney "for collection," whatever that may mean.

Some two months after Mrs. Altman bought the piano, Benedict got Giddey to go with him to Mrs. Altman's house, and without previous demand, and in her absence, they took possession of the piano, and carried it away with them to Giddey's house. Mrs. Altman, on returning home and finding what had been done, sued out a writ of replevin. On the trial of the replevin suit in the circuit court she has succeeded, and the case is now before us on writ of error.

The question which the record presents is, whether on the face of the instrument entered into by Armstrong & Co. and Benedict, and on the facts stated, the latter was entitled to possession of the piano. He claims that he was,

because by the express terms of the instrument the sale was conditional, and the title and right of control remained in him until he had realized the full purchase price from the tickets.

The agreement between these parties was very peculiar, and it is not easy to determine precisely what their understanding was. The first clause in the writing implies an executed sale, and the delivery and transfer by Armstrong & Co. to Benedict of four hundred subscription tickets in full payment. If the case were to turn upon this clause, there could be no question whatever that the sale was absolute. Nor does the provision a little further on indicate a different understanding. If Benedict does not succeed in selling all the tickets, Armstrong & Co. agree to purchase back what are unsold; an agreement clearly implying that the title to the tickets was to be in Benedict, and consequently that the title to the piano was to be in Armstrong. Then follow provisions upon which Benedict relies, and which indicate a different intent. It is agreed that the piano is to remain the property of Benedict, and subject to his directions, and not to be moved from place to place without his written assent until all the conditions of the instrument are fulfilled, and that in case of default, Benedict may declare the instrument void, take possession of the piano, and retain all payments made, as damages for non-performance. This seems to be a very clear declaration of the understanding of the parties that the transaction was not to be an absolute and unconditional sale.

But while so much is clear, it is also apparent that Benedict parted with the possession, and the parties undertook to provide what should be done in respect to it thereafter. The piano was to be subject to his direction, and not to be moved from place to place without his written assent. This clause, standing alone, might imply that he was at all times to have a right to take it into his own possession; or it might, on the other hand, evidence an understanding that although Armstrong & Co. were to have

27 MICH.—27.

possession, Benedict might determine where it should be kept, so that, if the agreement should eventually be declared void, the piano should be where he could conveniently assert his claim to it.    But it is important as bearing upon the construction, that the agreement imposes no penalty upon Armstrong & Co. for failure to observe this stipulation.    It is not agreed that if they shall remove the piano without consent, Armstrong & Co. shall forfeit their right thereto, or that Benedict may retake possession, or that any other specified consequences shall follow.    This stipulation would, therefore, seem to be a mere promise, a breach of which would result in no forfeiture of rights, though it might be the foundation of an action for the recovery of damages.

So far, it will be perceived, Benedict has not by the contract reserved to himself a right to retake the possession which he transferred to Armstrong, unless the words " the said instrument is to remain the property of said Benedict " will of themselves have that effect.    Unquestionably to stipulate that one shall have the property in a chattel, is, if nothing more is said, to stipulate that he shall have the right of possession also.    But in this case, by the same writing the possession was transferred to another, and it only remains to see how far it is consistent with this writing, that the possession under any circumstances may be retaken.

Assuming for the purposes of this case that Benedict's theory is correct, and that this writing evidences only a conditional sale, it would naturally be expected that if Benedict was at all times to have a right of possession, any stipulation on the subject designed to put the right beyond question would refer to a time previous to his declaring the sale void, rather than afterwards; because previous to that time there would be inferences more or less strong that the possession given to the purchasers was to remain in them, while after that time the inferences would be the other way.    And if we find in this case that Benedict

has been careful to require a stipulation for possession after his title shall have again become absolute, but has demanded none for the previous period while Armstrong & Co. still retain rights in the property, the conclusion will be natural, if not irresistible, that the putting an end to the contract by Benedict was to be a condition precedent to a restoration of his right to possession.

And this is what we find in this contract. It is agreed that when Benedict shall see fit to declare the contract void for failure in performance on the part of Armstrong & Co., he shall have the right to retake possession; but it is not agreed that he shall have the right on other condition, or under other circumstances. The natural and most obvious construction of the instrument would therefore seem to be, that Armstrong & Co. were to have possession of the piano until the sale should be declared void for their default, and then Benedict should be restored to all his former rights. Meantime, before default, Armstrong & Co. agree that Benedict, in anticipation of a possible forfeiture, shall have a right to direct where the piano shall be kept, but no penalty is attached to this agreement beyond what would follow the breach of an ordinary contract, and Armstrong & Co. would therefore lose no right in the piano, and Benedict gain none, by its being moved from place to place contrary to the provisions of the contract. The conclusion is, that Benedict was not entitled to possession of the piano when he took it, unless he had previously exercised his right to declare the contract of sale terminated.

There is nothing to show that he had exercised that right, unless the tender back of the tickets was sufficient; but this tender he waived when he subsequently put the tickets into the hands of an attorney for the purpose of collecting the money which they nominally represented. He must be regarded, therefore, as still treating the agreement of sale as in force.

The circuit judge charged the jury that the agreement

of sale transferred the title to Armstrong & Co. It is not necessary for us to decide whether this instruction was correct, as we think Mrs. Altman had the *prima facie* right, and that the defendant below, by failing to show that the sale had been declared void, wholly failed to establish a defense. The judgment should therefore be affirmed, with costs. But we have not deemed it proper to give an interpretation to the agreement further than was necessary to dispose of the questions on the present record, as it is obvious that different questions might possibly arise should there be further controversy, which might depend for their solution more or less on facts not now before us.

The other Justices concurred.