HORATIO N. HOVEY AND JOHN B. MCCRACKEN v.
JAMES GOW.

*Contract—Sale—Retention of title—Taxes—Replevin.*

A contract for the sale of lumber provided that it should belong
to the vendors until shipped, in the spring of 1889, and when
so shipped should be free of any insurance charges or taxes.
that might be assessed against it. A portion of the lumber
was seized to satisfy taxes assessed for 1888 against the ven-
dees, which was replevied by the vendors. And it is held that
the contract is unambiguous, and that under it the vendors.
remained the owners of the lumber until it was shipped.

Error to Muskegon. (Dickerman, J.) Argued May 15,.
1890. Decided June 6, 1890.

Replevin. Defendant brings error. Affirmed. The·
facts are stated in the opinion.

*DeLong & O'Hara,* for appellant, cited no authorities.

*Smith, Nims, Hoyt & Erwin,* for plaintiffs, contended:

1. The intention of the parties as expressed in their contracts is to·
   govern in their construction; citing *Mathews v. Phelps,* 61 Mich.
   327; and the manifest meaning of a contract must govern until
   it is shown to be impracticable; citing *Gillett v. Bowman,* 43.
   Mich. 477; and the whole instrument is to be construed
   together, and effect given, if possible, to every word and phrase;.
   citing *Vary v. Shea,* 36 Mich. 388; and the terms of an instru-
   ment, when clear and explicit, must prevail according to their
   most comprehensive signification; citing *Merrick v. Webster,* 3.
   Mich. 268.

CAHILL, J. This was an action of replevin, com-
menced by Hovey & McCracken, to recover a quantity of
lumber, which in March, 1889, had been seized by the
defendant, as city treasurer of Muskegon, to satisfy a.
claim for taxes assessed against A. P. & W. E. Kelley

Company of Chicago, on certain personal property of
theirs situate in Muskegon, and liable to assessment there.[1]
The amount of the tax was something over $1,000.

The plaintiffs claim to be the owners of the lumber in
suit, and their claim is based upon the following contract
made between them and A. P. & W. E. Kelley Company:

"MUSKEGON, MICH., Nov. 20, 1888.

"A. P. & W. E. Kelley Co. have this day bought, and
Hovey & McCracken have sold, one million feet selected
Eaglehead lumber, now in cross-piles on McCracken,
Hovey & Co.'s docks, in Muskegon, and one and one-
half million feet additional to be cut from their Eagle-
head logs, the lumber to be sorted and cross-piled as to
quality same as above, that being sixty per cent. of the
better lumber in the logs.

"Hovey & McCracken guarantee to sort lumber, as fol-
lows: Forty per cent. of the coarsest by itself, and they
are to retain it. The remaining sixty per cent. by itself
for A. P. & W. E. Kelley Co. At the close of the pres-
ent sawing season, C. S. Montague is to estimate lumber
on dock, and determine as to the percentage as to sort-
ing as above required. If sorted within two per cent. of
above requirements, either way, then this contract is to
be in force; if more than two per cent., it is at the
option of the A. P. & W. E. Kelley Co. whether they
take it or not; but they are to decide and notify the
sellers within five (5) days after said estimate is made.

"The lumber is to be sawed and trimmed in a good
and workman-like manner, and cross-piled on McCracken,
Hovey & Co.'s docks, and held until the spring of 1889
at the seller's risk; all the lumber to be cross-piled loose,
and the piles to have good pitch; all the piles to be
covered and tied down, to shed snow and rain.

"The seller agrees to commence sawing at once on the
one and one-half million feet yet to be sawed, and con-
tinue on same till the close of the present sawing season.
In case the whole amount is not cut at that time, they
will commence at the opening of navigation, in spring of
1889, and complete the sawing of the same.

"The purchasers buy the above-mentioned lumber on
the following terms: The lumber is to be settled for by

---

[1] The taxes were assessed for the year 1888.

the sellers' draft on the purchasers at such time, but not later than December 1, 1888, as the purchasers may elect, not exceeding six months' time from December 1, 1888; but the price must be eighteen and fifty one-hundredths dollars ($18.50) net per thousand feet, and half tally to the seller, December 1, 1888. Final settlement to be made when lumber is shipped, in spring of 1889. It is distinctly agreed that this lumber belongs to the sellers until shipped, in spring of 1889, and when so shipped it is to be free of any insurance charges or taxes that may be assessed against said lumber. All mill-culls to be taken out when shipped, and lumber to be tallied by C. S. Montague.

"It is further mutually agreed between the sellers and purchasers that, in the event of the loss of any portion of this lumber by fire, the purchasers may elect whether the trade is to be considered off for that portion of the lumber so destroyed, and the money refunded that may be due them, with interest at seven per cent. from the time the money was actually paid, or the purchasers may have the right, if there are any logs of the same mark on hand, to have this lumber so destroyed duplicated by sawing the same amount and quality, in manner as before. In case there should be any lumber burned, and no logs on hand to replace the lumber, the sellers are to refund to the purchasers to the amount of $18.50 per thousand feet, and interest at seven per cent., for the amount so destroyed.

"A. P. & W. E. KELLEY Co. [L. s.]
"A. P. Kelley, Pres.
"HOVEY & McCRACKEN. [L. s.]"

The lumber replevied was a part of the same lumber covered by this contract, and was worth $3,700. Mr. Hovey, one of the plaintiffs, testified, on cross-examination, that at the time this contract was made there was about 1,000,000 feet of the lumber sawed, and that they afterwards sawed five or six hundred thousand more; that it was not contemplated that any of this lumber was to be shipped until the spring of 1889; that the lumber amounted to $46,250 according to the tally when shipped; that $45,000 had been paid upon it before the defendant

seized it; that at the time of the seizure all the lumber
that had been sawed at that time was piled out for the
Kelley Company; that the mark they had on it was
"Eaglehead No. 1;" that he could not say whether it had
"K" marked on it or not; that the defendant seized
eight piles of lumber, containing about 200,000 feet, out
of fifteen or sixteen hundred thousand piled on the same
dock; that all this lumber, including the 200,000 feet
replevied, was finally shipped to the Kelley Company, who
paid the plaintiffs, the balance due on it.

The regularity of the defendant's tax roll and warrant,
and the fact that it showed a personal tax against A. P.
& W. E. Kelley Company for $1,089.46, was conceded.
The court directed a verdict for the plaintiffs, and the
defendant brings error.

The single question involved is as to whether, under
the contract between the parties, the title to this lumber
had passed from the plaintiffs to A. P. & W. E. Kelley
Company. By the contract it is distinctly agreed that
the lumber should belong to the sellers until shipped, in
the spring of 1889, and when so shipped to be free of
any insurance charges or taxes that may be assessed
against said lumber. Upon this record we are not con-
cerned with any reasons or motives that may have influ-
enced the parties in putting this provision into their
contract. Whether it was to require the plaintiffs to
pay the taxes that might be levied upon it does not
appear. Nor was it claimed that there was any unlaw-
ful or fraudulent purpose in putting such provision in
the contract. It is not for the courts to make contracts
between parties; they can only construe and enforce those
that have been made. We see nothing ambiguous or
doubtful about the meaning of this contract. We think
it clearly and explicitly provided that the plaintiffs
should be owners of the lumber until it was shipped.

By another provision of the contract, the lumber was to be tallied by C. S. Montague, and a final settlement was not to be made until the lumber was all shipped. If it fell short of the estimated quantity, there would be that much less money going to the plaintiffs. If they suffered the 200,000 feet seized by the defendant to be taken away and applied towards the payment of the A. P. & W. E. Kelley Company debt, they would not have been entitled to claim from A. P. & W. E. Kelley Company the value of that lumber at the contract price as though shipped. It was of importance, therefore, to the plaintiffs to reclaim this lumber so as to be able to ship it, as otherwise they must have lost the price of it.

The judgment is affirmed, with costs.

The other Justices concurred.