## CHARLES N. GILL v. ANDREW J. DEARMANT AND WILLIAM W. COOL.

*Conditional sale—Evidence—Replevin—Fixtures—Judgment— Appeal.*

1. Plaintiff agreed to sell the undivided half of a saw and shingle mill, and it was stipulated in the contract that a failure to pay the purchase price should avoid the contract. The purchaser went into possession with the plaintiff, and then sold her interest in the property, and her vendee purchased plaintiff's remaining interest upon a contract which reserved the title to the plaintiff until the purchase price was paid, and went into sole possession. After the partial destruction of the property by fire, the second vendee sold a portion of the mill machinery to the defendants, who affixed it to their mill. Plaintiff replevied the machinery, and on the trial offered the two agreements in evidence, and they were received, in connection with proof that a considerable sum was due and unpaid on each when the suit was commenced. Defendants' counsel objected to the contracts, on the ground that they did not tend to show title in the plaintiff, which objection is held untenable. And it is further held:

   *a*—An agreement for the sale of personal property which contains a stipulation that, in case default is made in the payment of the purchase price as stipulated, the agreement shall be null and void, passes no title to the purchaser until the purchase price is paid.[1]

---

[1] See *Read v. Horner*, 90 Mich. 152.

*b*—The title to personal property does not pass to a purchaser, under an agreement retaining it in the vendor until the purchase price is paid, until such payment is made.[1]

2. Machinery in the possession of a vendee under a contract for its purchase, which retains the title in the vendor until the machinery is paid for, cannot be attached to a mill by a purchaser from the vendee, before such payment, so as to make it a part of the realty.

3. In replevin for a portion of certain property sold by the plaintiff under a contract retaining the title in him until the purchase price was paid, which portion the defendant had purchased of the vendee, the plaintiff may show that the value of the whole property does not exceed the amount remaining unpaid on the original contract at the time the suit was commenced.

4. An officer's return to a writ of replevin showed that he had delivered the property (mill machinery) to the plaintiff, but it appeared on the trial that by the agreement of the parties the machinery was to remain in the mill during the pendency of the suit, until its value was determined. The case was tried before the court, and a judgment rendered in favor of the plaintiff for the value of the property. A bill of exceptions was settled, but no findings of fact or law were asked for or made. The defendant assigned as error the form of the judgment, claiming that it should have been that the property be replevied and delivered to the plaintiff, and that, in default thereof, plaintiff should recover its value. The attention of the trial court was not called to the alleged error, and the judgment is therefore affirmed.

Error to Emmet. (Aldrich, J., presiding.) Submitted on briefs February 5, 1892. Decided March 4, 1892.

Replevin. Defendants bring error. Affirmed. The facts are stated in the opinion.

*M. W. George,* for appellants.

---

[1] See the following cases in which the doctrine of conditional sales is discussed: *Edwards v. Symons,* 65 Mich. 348; *Jenks v. Colwell,* 66 Id. 420; *Hood v. Olin,* 68 Id. 165, 80 Id. 296; *Begole v. Stone,* 72 Id. 71; *Button v. Trader,* 75 Id. 295; *Bank v. Filer,* 80 Id. 67; *Kendrick v. Beard,* 81 Id. 182; *Hovey v. Gow,* Id. 314; *Brewery Co. v. Merritt,* 82 Id. 199; *Pratt v. Burhans,* 84 Id. 487; *Tufts v. D'Arcambal,* 85 Id. 185; *Wiggins v. Snow,* 89 Id. 476.

*B. T. Halstead,* for plaintiff.

LONG, J. This is an action of replevin for one saw frame and carriage and appurtenances.

The action was commenced in justice's court in Emmet county. The writ was placed in the hands of the sheriff, who returned upon the writ that he had replevied the property, and delivered the same to the plaintiff, and also summoned the defendants to appear according to the mandate of the writ. The parties appeared on the return-day and joined issue; the defendants giving notice, under their plea of the general issue, that the property described was at the time the suit was brought a part and portion of certain described real estate. Plaintiff had judgment in justice's court, finding the title of the property in him, and assessing his damages for detention at six cents. Defendants appealed to the circuit court, where the cause was tried before the court without a jury.

The plaintiff, to maintain his action, was called as a witness, and testified that he was the owner of the property at the time of bringing the suit; that he found it in defendants' possession, and made demand for it, which was refused; that the property was formerly a part of a mill at Clarion, in Charlevoix county, and had been removed by the defendants, and put up in their mill at Petoskey. He offered in evidence:

1. An agreement in writing, made March 15, 1888, between himself and one Lillie M. Messler, by the terms of which he agreed to sell to her an undivided one-half interest in the mill at Clarion, then owned by him, for a consideration of $200. This included the property in controversy. One hundred dollars was to be paid at the signing of the agreement, and the balance on or before March 15, 1889. There was a stipulation in this agree-

ment that in case default should be made in the payments the agreement should be null and void. There was paid on this contract $137.38, March 31, 1888, and $18.50, April 30, 1888. No further payments were made.

2. A contract made between himself and one Elizabeth Hass, July 2, 1889, by the terms of which he sold conditionally to her an undivided one-half interest in the mill for the sum of $565. This also included the property in controversy. By the terms of this agreement $52.50 was paid at its date, the balance to be paid in monthly installments of $25. The title of the property was to remain in the plaintiff until fully paid for. October 29, 1889, Mrs. Hass paid $25, and on December 14, 1889, she paid $115.19. These were all the payments made on that contract.

The parties took possession of the mill under these contracts.

It appears that the mill and property described in these contracts were partially destroyed by fire, and that the defendants, on April 28, 1890, purchased the property in controversy from James R. Hass, the husband of Elizabeth Hass, and who acted as her agent; he giving the defendants a bill of sale, the consideration expressed in it being the sum of $65, which defendants paid. Mrs. Hass was in possession of the mill property at the time the bill of sale was given.[1] The defendants took

---

[1] It appears from plaintiff's testimony that Mrs. Messler went into possession under her contract, and that plaintiff held possession with her; and that, on making the sale of the other undivided half of the mill to Mrs. Hass, she went into possession to the exclusion of the plaintiff. While the record is silent on the subject, it appears from the briefs in the case that, prior to her purchase, Mrs. Hass had acquired whatever interest Mrs. Messler owned under her contract; and the agreement with Mrs. Hass describes the property intended to be sold as the "undivided one-half interest of saw-mill and shingle mill, with fixtures, now owned and operated by said Charles N. Gill and Elizabeth Hass, in the village of Clarion, Charlevoix county, Michigan."

the saw frame and carriage and appurtenances, placed it in their mill at Petoskey, where it was bolted to the floor, and used by them in their business.

Defendants' counsel objected to the introduction of these contracts in evidence, claiming that they did not tend to show title in the plaintiff. They were admitted. This constitutes defendants' first claim of error.

The plaintiff's counsel contended that the agreement with Lillie M. Messler is an executory contract or agreement to convey upon condition that payments were made as provided, and that, the vendee having defaulted in the payments, the title to that undivided one-half interest never passed to her; that, by the express provisions of the contract with Elizabeth Hass, that undivided one-half interest never passed to her; and that, therefore, the title to that part of the property in controversy here still remained in plaintiff at the time the suit was brought. The court below so held, and, we think, very properly. The contract with Mrs. Messler does not purport to be a conveyance of the title of the mill property, but an agreement that, upon certain conditions thereafter to be performed by her, plaintiff would convey the title to her. These conditions were not performed, and therefore the title to that undivided one-half interest had not passed out of the plaintiff. In the contract with Mrs. Hass the plaintiff expressly reserved the title in himself until full payment was made. These payments have not been made in full, so that the title to all of the mill property remained in the plaintiff at the time the defendants purchased from Mrs. Hass, through her husband.

There was a considerable amount yet due to the plaintiff under both these contracts at the time the suit was brought; and the plaintiff was permitted to testify upon

the trial, under defendants' objection, to the value of the property left at the mill, covered by these contracts, and not taken by the defendants. Defendants' counsel bases his second claim of error upon the admission of this testimony. There was no error in admitting it. It appears from this testimony, and the plaintiff had the right to show the fact, that the value of the whole property, including that taken by defendants, was no greater than the amounts remaining unpaid under these contracts.

The defendants' third claim was that the property taken by them, and put in their mill at Petoskey, was so annexed to the realty that an action of replevin could not be maintained, as its removal from the mill would be an injury to the realty to which it was attached. The court below ruled that the property had not become so attached. We think the court was correct. It was property belonging to the plaintiff, taken by the defendants, and by them put in use in their mill. It was property capable of beneficial use if set up in any other place. No agreement is shown upon the part of the owner that the defendants might so attach it; and the defendants, under the circumstances here stated, cannot be permitted to make such a claim. Personal property may become a part of real estate, where affixed to it, if such was the understanding between the parties; or it might remain personal estate, if the understanding to that effect was clearly indicated, or fairly deducible from the circumstances. *Manwaring v. Jenison*, 61 Mich. 117; *Rogers v. Brokaw*, 25 N. J. Eq. 496; *Blancke v. Rogers*, 26 Id. 563; *Voorhees v. McGinnis*, 48 N. Y. 278. Here the attempt is made to take the property of another, and to attach it to the realty, without the consent of the owner, and then to assert that it is a part of the

realty.    The  court  below  very  properly  held  that  this
could  not  be  done.

The  court  below,  upon  the  presentation  of  the  whole
case,  entered  judgment  in  favor  of  the  plaintiff.[1]   Com-
plaint  is  made  by  defendants'  counsel  as  to  the  form  of
this  judgment.   It  appeared  upon  the  trial  that  although
the  officer  stated  in  his  return  that  he  had  replevied  the
property,  and  delivered  it  to  the  plaintiff,  the  fact  was
that  at  the  time  of  the  service  of  the  writ  the  officer
did  not  remove  the  property  from  defendants'  mill,  or
disturb  it  therein,  but,  by  an  arrangement  between  the
parties  themselves,  it  was  agreed  that  the  property  should
remain  there  pending  the  suit,  until  its  value  was  deter-
mined.   A  bill  of  exceptions  was  settled  in  the  case,
but  the  cause  was  tried  before  the  court  without  a  jury,
and  there  is  nothing  in  the  record  showing  that  findings
of  fact  or  law  were  asked  or  made.   The  attention  of
the  trial  court,  as  appears  from  the  record,  was  not
called  to  the  form  of  judgment  entered,  and  the  question
is  raised  in  this  Court,  for  the  first  time,  by  an  assign-
ment  of  error.

The  judgment  of  the  court  below  must  therefore  be
affirmed,  with  costs.

The  other  Justices  concurred.

---

[1] The judgment was for the value of the property.