| 103 | 155 |
| 111 | 418 |
| 103 | 155 |
| 143 | 13 |

## NELSON A. PETTYPLACE v. THE GROTON BRIDGE & MANUFACTURING COMPANY.

*Conditional sale—Fraud—Estoppel—Evidence.*

1. A copy of a contract in the form of an order for the purchase of an engine and separator, in which the vendor stipulated for the retention of title until the purchase price should be paid, was left with the purchasers. Upon the delivery of the property, four notes were given for the purchase price, in each of which it was stated that the express conditions of the transfer of the possession of the property were such that the title did not pass from the vendor until the note should be paid in full. The fourth note was secured by a real-estate mortgage

executed by one of the purchasers, and in the condition for payment reference was had to a "title-clause note" of even date, executed by the mortgagor to the mortgagee as collateral security. With this knowledge of the contents of the note and mortgage the mortgagor signed the securities, and, in company with one of his co-vendees, took possession of the engine and separator, and used the same for two years, when he sold his one-third interest therein. In a suit by the purchaser of said interest against the vendor, who had seized the property, to recover the value of said interest, the plaintiff, who claimed to have purchased without knowledge or notice of the defendant's rights, sought to show that the mortgagor was induced to sign the contract by fraud, in that, before signing the same, the agent of the vendor read it over to him, as he did not have his glasses with him, and could not read without them, and that the agent did not read the printed stipulation as to title. And it is held that it cannot be contended, under the facts stated, that the mortgagor did not know of this stipulation.

2. The contract described the vendor as the party of the first part, and the three vendees as the party of the second part, and stated that the party of the first part, in consideration of the payments and agreements thereinafter contained, agreed to sell to the party of the second part the engine and separator for a price named, payable in four negotiable notes. Of the notes given in accordance with the contract, the first was signed by the three vendees, the second and third by two of the vendees, and the fourth by the third vendee, who secured the same by a real-estate mortgage. It was further provided in the contract that the vendees were to pay the freight. And it is held that the contract is not ambiguous, and that the contention of the plaintiff that it conveyed separate interests in the property, and that he was entitled to show what the arrangement and agreement was with each vendee, is untenable.

3. A sale of personal property upon condition that the title shall remain in the vendor until the purchase price is paid does not become absolute by reason of the acceptance by the vendor of additional security by way of the indorsement of one of the purchase-price notes and the securing of another note by a real-estate mortgage.[1]

Error to Saginaw. (McKnight, J.) Argued November 22, 1894. Decided December 18, 1894.

---

' [1] See note at the end of the opinion.

Trover.   Plaintiff brings error.   Affirmed.   The facts are stated in the opinion.

*Humphrey & Grant,* for appellant.

*Lyon & Hadsall,* for defendant.

LONG, J   This action was brought to recover the value of a one-third interest in an engine and threshing machine. Defendant had verdict· and judgment under the direction of the court.

It appears that in July, 1890, B. R. Cushman, William N. Cushman, and A. R. Dodge entered into a contract in writing with the defendant for the purchase of the engine and thresher for the price of $1,550.   To secure the payment of the purchase price four notes were to be given. The property was delivered in August, and the notes given. The first was for $387.50, and was signed by all the parties; the second was signed by the two Cushmans and by Jared A. Cushman as surety; the third by the two Cushmans; and the fourth by Mr. Dodge alone, and to secure the payment of which he gave a real-estate mortgage, signed by himself and wife.   Each of the last three notes was equal in amount to the first.   The contract contained a printed stipulation as to the material and workmanship of the machine, and in which it was recited:

"The title, ownership, and right of possession shall remain in the party of the first part until the price above named, including notes, is fully paid."

The contract was signed by the two Cushmans and Dodge.   The first note was fully paid, and the second one also, all but $18.66.   Nothing was paid on the third, and the fourth was not yet due when the machine was taken by defendant.   The interest of one of the Cushmans and of Dodge in the machine was transferred to the plaintiff, who took the transfer from Dodge without notice of the

rights of defendant under the contract.[1] Defendant took the property into possession, claiming that right under the contract, by reason of failure of the payment of the third note. The real-estate mortgage given by Dodge and wife has been foreclosed, or is in process of foreclosure.

It was claimed on the trial by plaintiff:

1. That the contract was a sale to each of the Cushmans and Dodge of a one-third interest, and not a sale of the whole to them jointly, and that each is responsible only for the payment of one-third of the purchase price.

2. That because one note was indorsed by Jared A. Cushman, and one note secured by Dodge by a real-estate mortgage, the sale was a completed one, and the company could not insist upon the subsequent provision in the contract which recited that it retained title to the property; that the recitation of the times and terms of payment are inconsistent with the provision as to the title remaining in the defendant company, and, as the times and terms of payment were written in, while the stipulation as to title is a part of the printed form, the former must control.

3. That Mr. Dodge was induced to sign the contract by fraud, in that, before the contract was signed, the agent of the company read it over to him, as he did not have his glasses with him, and could not read without them, and that the agent did not read this printed stipulation as to title.

Under this last claim the plaintiff sought to show the alleged fraud; but the evidence was excluded, and, we think, properly. It appeared that the contract was in the form of an order for the machine. A copy was left with the Cushmans and Dodge, and when the machine was delivered the notes and mortgage were given. The notes

---

[1] The action was originally brought to recover the value of a two-thirds interest, but at the close of the proofs plaintiff's counsel stated that they only asked a recovery for the one-third interest purchased of Dodge, as to which they claimed that the plaintiff was an innocent purchaser for a valuable consideration, but not as to the one-third interest purchased from Cushman.

contained the same stipulation as to title as contained in the contract, and the mortgage given by Dodge referred to this clause. The note and mortgage signed by Dodge were read by him, and he was fully apprised of the stipulation as to title. Knowing the contents of these instruments, he signed them, took the machine into possession, and used it for two years, and finally sold his interest. It cannot be contended, under such circumstances, that he did not know of this stipulation.

The plaintiff, under his claim that the contract conveyed separate interests, sought to show what the arrangement and agreement was. This was based upon the claim that the order or contract of purchase was ambiguous and needed explanation. The court held that no ambiguity existed, and, we think, properly. In the case of *Larkin v. Butterfield*, 29 Mich. 254, it was expressly stipulated in the contract that "each of the said first parties to be held personally responsible for one-fourth of the said $1,500." This was held to be a several, and not a joint, undertaking, and that this was shown upon the face of the contract. But it is evident that the parties to the contract in the present case did not regard the contract of purchase as conveying to them separate interests. After the purchase, they entered into a contract between themselves relative to the running of the thresher, what each was to do, and how the accounts were to be collected and the proceeds divided.

There cannot be said to have been a completed sale. It is conceded that the title to personal property sold may be retained by the seller, and that a note may be taken for the price, and the sale will still be conditional; but it is claimed that, if other or collateral security be taken, then the sale becomes absolute. This is not the rule. It was held in *Peninsular General Electric Light Co. v. Norris*, 100 Mich. 496, that a mechanic's lien could be en-

forced notwithstanding the title was held by the vendor. In *Manufacturing Co. v. Smith*, 40 Fed. Rep. 339, it was said:

"Instead of being inconsistent, it was merely additional security to that provided by the statute. It certainly does not establish, as matter of law, that, in thus retaining title to the machinery, complainant has waived its statutory lien upon the lot of ground or premises on which the machinery was placed."

In *Fuller v. Byrne*, 102 Mich. 461, a stipulation was inserted in the contract, which provided that the property "is and shall remain the property of Estey & Camp until each and every of said amounts, and interest thereon, and any judgment rendered thereon, is paid in full." It was claimed that the rendition of judgment for the purchase price passed the title to the property. It was held that it did not have that effect, but that the vendor could take possession of the property under the contract.

It was held in *Couse v. Tregent*, 11 Mich. 65, that one in possession of personal property, of which he has made a conditional purchase, cannot, before the condition has been complied with, sell the property so as to vest the title in a *bona fide* purchaser. This rule has been restated in many subsequent cases, and in which it has been held that the contract need not be recorded as a chattel mortgage. The court below was clearly right in directing verdict for defendant.

The judgment must be affirmed.

McGRATH, C. J., GRANT and HOOKER, JJ., concurred. MONTGOMERY, J., did not sit.

---

CONDITIONAL SALE OF PERSONAL PROPERTY.

The growing importance of the questions arising out of the sale of personal property, coupled with the retention of title by the vendor until the conditions of the contract of sale are performed, has seemed to justify the preparation and publication, in connec-

tion with the foregoing opinion, of a note collating the Michigan cases bearing upon the subject.

### General Rules Applicable to the Subject.

1. *Couse v. Tregent*, 11 Mich. 65, holding that the right of the owner of chattels' to sell the same conditionally is as old as the right to loan them; that the possession by the conditional purchaser is no more a means of defrauding third parties than that of the bailee of goods for hire; that, so long as the conditions are not waived and remain unperformed, the property does not vest in the purchaser; that the principal question which has engaged the attention of courts is that of a waiver, for, if the condition be waived, the property passes with delivery.

2. *Edwards v. Symons*, 65 Mich. 348, 355, holding that the rule of law that permits a vendor to retain the title to goods bartered by him, and placed apparently in the exclusive possession, control, and ownership of the vendee, until the whole purchase price is paid, without notice to parties dealing with such vendee, is, at best, a harsh one, and should not be enforced except in cases where the agreement so to hold the title is positive and unambiguous.

3. *Jenks v. Colwell*, 66 Mich. 420, 428, holding that in Michigan, where the validity of conditional sales of personal property is recognized, the right of the vendor to follow the property into the hands of third parties, or to sue them for its conversion, depends upon the good faith of the transaction; that where the purchase is made from the vendee in good faith, and without notice, and under circumstances in which the original vendor must have known or contemplated that the property would be sold by his vendee, and incorporated into or made a part of the freehold, his rights are subservient to those of the innocent purchaser.

4. *Thirlby v. Rainbow*, 93 Mich. 164, holding that the question of the right of a vendee of personal property, the title to which was retained in the vendor until the payment of the purchase price, with the right to reduce it to possession in case of non-payment, to recover the amount paid thereon in excess of what the vendor had a right to retain, cannot be tried in a replevin suit brought by the vendor after default in payment and refusal to surrender the property.

### Illustrative Cases.

1. *Couse v. Tregent*, 11 Mich. 65, where a piano was sold and delivered to the vendee upon a written agreement that the instrument should remain the property of the vendor, and subject to his direction, until paid for, when it should become the property of the vendee, who, in case of default in such payment at the

103 MICH.—11.

time specified, should pay interest on all amounts not paid. The vendee sold the piano to a good-faith purchaser, from whose possession it was replevied by the vendor, who claimed to be the owner. And it was held that the original sale and delivery of the piano were both conditional; that the vendor could not, as between himself and the vendee, be said to have parted with the title; that the possession of the vendee was determinable at the pleasure of the vendor from the moment of delivery until payment; that by such delivery the vendor did not give to the vendee the ostensible ownership any more than the lender or hirer of chattels gives it to the person to whom he lends or hires them; that the possession of goods, although *prima facie* evidence of ownership, is not such proof of it as to confer any equities upon third parties against the title of the actual owner, unless fraud exists.

2. *Dunlap v. Gleason*, 16 Mich. 158, where a sewing machine was delivered by the owner to a man and his wife, who agreed in the receipt given for the machine to safely keep and carefully use the machine, and not remove it from the county in which they resided, and at the expiration of three months return it to the owner, free of charge and unincumbered. This agreement was subject to an understanding, expressed in a proviso, that if, on or before the expiration of said three months, the husband should pay to the owner the sum of $60, the receipt should be null and void, and the owner should execute to the husband a bill of sale of the machine. And, in replevin by the owner against a purchaser of the machine from the husband and wife, it was held that the terms of the paper clearly showed that the owner of the machine did not intend to trust to the personal responsibility of the husband, or to part with his title to the machine, conditionally or otherwise, until the $60 should be paid; that he did not take from the husband an alternative promise, leaving with him a choice in performance, but required an absolute undertaking for the return of the machine within a time limited; that the further stipulation was in the nature of a defeasance of that undertaking, dependent, not upon the husband's agreement to pay the $60, but upon his *actually paying it;* that, until such payment should be made, the agreement to return the machine remained in full force, and that the owner had a right to replevy it when the husband put it out of his hands, whether the three months had expired or not.

3. *Preston v. Whitney*, 23 Mich. 260, where a music dealer contracted in writing for the sale of a piano at an agreed price. The contract provided that the unpaid portion of the purchase price should be paid in installments, and that until paid the piano should remain the property of the vendor; that, in case the vendee should fail to make any payment as specified, at and from the

time of such failure the vendor should be entitled to the posses-
sion of the piano, and the contract should become void.    After
the vendee had paid $100 of the purchase price, and the piano had
been in his possession three months, he failed to make the fifth
payment, whereupon the piano was taken back by the vendor,
who gave the vendee his note for $70 to cover the $100 so paid,
less $30 deducted for the use of the instrument. And in a suit
upon said note it was held:

*a*—That the agreement was one for a conditional sale only, the
property remaining in the vendor, as owner, until paid for; that
it never passed to the vendee; that while it was expressly pro-
vided that, for non-payment of any one of the several installments,
the vendor might take possession and said agreement to sell should
become void, no provision was made for the forfeiture by the
vendee, or the retention by the vendor, of any sum or any por-
tion of the sum which might have been paid upon it before for-
feiture; that, from the time of taking possession, the agreement
for the sale might be treated as void, or, more properly, as ter-
minated.

*b*—That the vendor, having received $100 of the vendee's money,
paid only in consideration of the proposed purchase, and having
taken back the property which constituted the consideration, and
having terminated the contract upon which it was paid, had so
much of the vendee's money in his hands, for which he should
account upon just and equitable principles; that he would have
the right to deduct from the amount so paid a fair compensation
for the use of the piano during the period it remained in the
vendee's possession (or perhaps, at his option, the interest on its
price for that period), as well as for any reduction in value
from injury beyond that arising from its legitimate use, and for
any incidental expenses in regaining possession; but that he would
have no right, under the agreement, to claim any forfeiture of all
the money paid, beyond such reasonable compensation.

4. *Giddey v. Altman*, 27 Mich. 206, where a piano was delivered
to a firm upon their agreement to purchase the instrument, and
in payment therefor to deliver to the vendor certain subscription
tickets for a newspaper.    The contract further provided that the
vendees should repurchase, at a stated price, all the tickets which
the vendor had not disposed of by a given date, he agreeing to
use all reasonable exertion and diligence to sell the tickets.    It
was further agreed that the piano should remain the property of
the vendor, and subject to his directions, and should not be moved
from place to place without his written assent, until the con-
ditions specified should be fulfilled.   No penalty was imposed upon
the vendees for failure to observe this latter stipulation.   In case
of default on the part of the vendees in any of the conditions to

be by them performed, the vendor was to have the right to declare the agreement void, and take possession of the piano wherever it might be found, without legal process, and retain the payments theretofore made to apply as damages for the non-performance of the agreement. The vendees sold the piano, and it finally came into the possession of a good-faith purchaser. The vendor did not succeed in selling all of the tickets, and after tendering to the vendees those remaining unsold, which they refused to accept, he placed the same in the hands of an attorney for collection, and, without previous demand, took possession of the piano, and it was replevied by said purchaser. And it was held that the most natural and obvious construction of the agreement was that the vendees were to have possession of the piano until the sale should be declared void for their default, when the vendor would be restored to all his former rights; that no penalty was attached to the failure of the vendees to observe the stipulation as to the non-removal of the piano, etc., beyond what would follow the breach of an ordinary contract, and the vendees would therefore lose no rights in the piano, and the vendor gain none, by a violation of said stipulation; that the vendor was not entitled to the possession of the piano when he took it, unless he had previously exercised his right to declare the contract of sale terminated, of which there was no proof, unless the tender of the unsold tickets to the vendees was sufficient; that the vendor waived the tender when he subsequently delivered the tickets to the attorney for the purpose of collecting the money which they nominally represented, and he must be regarded, therefore, as still treating the agreement of sale as in force.

5. *Johnston v. Whittemore*, 27 Mich. 463, where a firm of music dealers made a conditional sale of an organ, and took from the vendee a contract in which he agreed to hold in his possession the organ, and purchase the same at an agreed price, payable as stated in the contract. It was provided, further, that the organ should remain the property of the vendors, subject to their direction, and not to be moved from place to place without their written assent, until the purchase price should be paid; that, in case of default in any of said conditions, the vendors might declare the agreement void, and take possession of the organ without legal process, and the payments which might have been made might be retained to apply as damages for the non-performance of the contract. And in trover for the organ, which had been converted by the vendee after all of the purchase price, except $100, had been paid, it was held that the vendors could not recover, as damages, the value of the organ; that the unpaid portion of the purchase price and interest represented their entire interest in the organ at the time of the conversion; that the provision for the retention of

the payments that had been made, as damages for the non-performance of the contract, was connected with, and intended as a part of, the provision for declaring the contract void and retaking the organ, and was intended to apply only to such a contingency; that the vendors did not proceed upon that ground; that what might have been the effect of said provision in case the contract had been declared void need not be decided, though it was clear that such a provision is not one which the law would enforce as for stipulated damages, as it is not based upon any idea of just and adequate compensation.

6. *Whitney v. McConnell*, 29 Mich. 12, where music dealers made an executory bargain for the sale of a piano, evidenced by a contract containing a provision that the instrument should remain the property of the vendors until paid for, and that until paid for it should not be removed from the residence of the vendee without the written consent of the vendors. The vendee pawned the piano, and the vendors replevied it from the pawn-broker without demand. And it was held that the contract created a bailment in the vendee; that the condition against removal was not only valid, but necessary to secure the vendors from just such transactions as the one complained of; that the transfer and removal of the piano into the custody of the pawn-broker was a direct violation of the duty of the vendee as bailee, and that no demand was necessary before replevying the instrument.

7. *Knowlton v. Johnson*, 37 Mich. 47, where certain water-wheels were sold to the lessees of a grist-mill with the express understanding that they were to be put into the mill and used therein, but that no property in the wheels should vest in the lessees until they were accepted and paid for. The lessees received the wheels, and, against the objection of the lessor, removed those already in the mill, and set up the new ones in their stead. The new wheels were attached to the building, and the flume was built up around them in such manner as to prevent their being removed without injury to the building to the extent of from $100 to $200. The lessees, after operating the mill for a time, surrendered their lease, and the lessor leased the mill to one of their employés, who ran it until the lessor sold the mill, without reservation, except of the old wheels, which were lying unused in the mill basement. The purchaser had no notice of any claim against or on account of the new wheels. And, in trover by the vendors for the new wheels, it was held that the plaintiffs deliberately agreed that the wheels should be converted in all outward appearance into real property, and thereby put it into the power of the lessor to make sale of the wheels as part of the mill; that he sold accordingly; that the defendant purchased; that he acted in good faith, and was guilty of no want of care; that, when the plaint-

iffs allowed the wheels to be worked into the mill, they assumed risks, and among them such a result as had occurred; and that it would be contrary to justice to allow them to save themselves by casting the consequences upon the defendant.

8. *Smith v. Lozo*, 42 Mich. 6, where a sewing machine was rented to a proposed purchaser at a specified rental, of which $25 was paid down, and of the remainder $5 was to be paid on the first day of each succeeding month until the sum of $85 should be paid. The agreement contained the usual provisions as to forfeiture in case of non-payment of rent or of a sale or attempted sale of the machine, and closed with a stipulation that, if the lessee desired to purchase the machine, she should have the privilege of doing so at any time during the continuance of the renting by paying to the lessor the $85, in which case all sums paid for rent should be deducted from said sum, but that such privilege to purchase should in no way interfere with the right of the lessor to control the machine, all property remaining in the lessor the same as though the privilege of purchase had not been added to the agreement for renting, until the $85 should be paid. And it was held that the title to the machine continued in the lessor, and that in point of law it was entitled to dispossess the lessee in case of her default.

9. *Winchester v. King*, 46 Mich. 102, holding that the mortgaging by a vendee of goods furnished him under a contract retaining the title in the vendor until the goods are paid for is an assumption of ownership on the part of the vendee wholly inconsistent with the title claimed by the vendor, and such a termination of the contract of bailment as entitles the vendor to the possession of the goods.

10. *Ingersoll v. Barnes*, 47 Mich. 104, where a steam engine was sold under a written agreement which provided that, after the making of a cash payment thereon, the vendee should be allowed to take the engine and put it in the flouring mill he was then building, subject to the further provision that the engine, although put into said mill and used there or elsewhere, should be and remain the property of the vendors until fully paid for. The engine was placed in the mill, and the vendee, after running the mill for a time, conveyed the mill property by a warranty deed to a third party. The vendors sued the purchaser in trover for the engine, and recovered a judgment for its value. And it was held:

*a*—That, it not appearing that either of the vendors had any knowledge of the manner in which the engine was attached to the realty previous to the sale to the defendant of the mill property, the case stood in that respect as the ordinary one of a sale of an engine to be put up and used as the motive power in a mill.

*b*—That as the evidence tended to show that the defendant had sufficient knowledge of the plaintiffs' claim to have put him upon his guard, and put upon him the duty of making inquiry, acting as a prudent, cautious man should do under the circumstances, the case was not governed by *Knowlton v. Johnson*, 37 Mich. 47, and the judgment was affirmed.

11. *Marquette Manufacturing Co. v. Jeffery*, 49 Mich. 283, where certain steam and wood-working machinery was delivered to proposed purchasers under an agreement retaining the title in the vendor until paid for, with the right to resume possession of the property, wherever found, at any time, for the breach of the contract. The contract further provided that, when all of its terms and conditions should be performed, the vendor should give to the vendees a bill of sale and guarantee the title. Before the machinery was paid for, and after it had been fastened and permanently bolted down, and the boiler walled up in a building owned by the vendees and standing on leased land, the entire property was levied upon by a judgment creditor of the vendees, whereupon the vendor replevied the machinery from the sheriff. And, in affirming a judgment in favor of the plaintiff, it was held that no language could have been used which would have expressed more plainly the intention of the parties to pass no title, and that there was no title in the vendees which could authorize the levy.

12. *Adams v. Wood*, 51 Mich. 411, where a vendor replevied a horse which he had sold and delivered to the defendant, retaining the title until the animal should be paid for. The purchase price, except $10, which was not due at time of the seizure, had been paid. No demand for the horse or the $10 was made. The defendant had never sought to change or in any manner incumber the title to the property, or do any other act in violation of his contract of purchase. Upon these facts the circuit judge found that the suit was prematurely brought, and rendered a judgment in favor of the defendant for a return of the property and $10 damages for its detention, with costs, and in favor of the plaintiff for a special interest in the horse to the amount of $10. And in affirming the judgment it was held:

*a*—That the defendant came lawfully into the possession of the property; that, under the facts found, the question of the waiver of necessity for a demand became immaterial, as the taking under the writ appeared to have been without right.

*b*—That the judgment for the return of the property did no more than transfer the possession to the party from whom it had been wrongfully taken; that it did not impair the plaintiff's rights under his contract of sale, upon which there was no contest; that

it gave him the amount of his interest therein, and with this he should have been content.

13. *Edwards v. Symons*, 65 Mich. 348, where one of two copartners agreed with the other (a corporation) to purchase its interest in the partnership at an agreed price, payable in installments, with interest on deferred payments. The vendor was to retain its title to the property until full performance by the vendee of the agreement, as its interest in the partnership might from time to time appear, it being agreed that the interest of the vendee should increase, and that of the vendor decrease, in proportion to the payments made by the vendee in accordance with the terms of the contract of sale, and that, so long as the vendee was not in default, all of the profits of the business should belong to him, the interest received upon the deferred payments being accepted by the vendor in lieu of its share of said profits. Pursuant to the terms of the agreement the vendee assumed, and up to the time of the making by him of an assignment for the benefit of creditors, which occurred some six months later, retained, the sole possession and management of the business, which was carried on in the partnership name, during which time he purchased goods and contracted debts to quite an amount. The assignee for the creditors took possession of the property, and converted it into money. And, in an action of *assumpsit* brought by the assignee of the contract against the assignee for creditors, it was held:

*a*—That the title of the vendor to the partnership property could not be extended to goods or property purchased by the vendee after the date of the contract of purchase, which did not, by express terms, cover after-acquired goods; that the filing of said contract in the office of the clerk of the city in which the parties resided could not enlarge the scope of the agreement as to the title to the property, nor could it be considered as creating a lien or mortgage upon goods bought after its date.

*b*—That the plaintiff was entitled to a judgment for the amount of the goods on hand at the time of the assignment to the defendant that were a part of the stock when the contract of sale was made, and to such portion of the collections made by the defendant as assignee as came from the proceeds of the sale of such goods or property as formed a portion of the stock on hand at the date of said contract.

14. *Jenks v. Colwell*, 66 Mich. 420, where a millwright contracted to construct a mill building on land owned by the contractees, and placed therein a steam boiler and machinery. He then entered into a contract with the manufacturers for the purchase from them of the boiler and machinery at a specified price, $500 of which was to be paid down, and the balance in 20 days, with

interest, upon the making of which latter payment the manufacturers were to execute to him a bill of sale of the property. The contract further provided that the title to the boiler and machinery should not pass out of the manufacturers until the purchase price should be fully paid; that the same should not become a fixture by being placed in any mill or other building, or by being annexed in any manner to the realty; and that, upon the violation by the vendee of any of the conditions of the contract, the manufacturers might take possession of the property, and that any money already paid thereon should be considered as having been paid for the use of the same. At the time of the making of the contract, the manufacturers knew what use the vendee proposed to make of the boiler and machinery, and were informed by him of his contract in regard thereto. The vendee did not make the $500 payment himself, and the boiler and machinery were shipped to him upon the telegraphic guaranty of the contractees to make said payment for him. The vendee, claiming to have completed his contract, gave the manufacturers an order on the contractees for the balance their due. The contractees sent to the manufacturers a draft for said amount, less $300, which they claimed to have expended in completing the mill according to contract, leaving a balance due the manufacturers of $597.44. The contractees had no notice of any claim by the manufacturers upon the boiler and machinery until one month after their shipment, at which time they received a letter from them stating the balance due and asking for payment of the same. And, in an action of trover by the manufacturers against the contractees for their claimed interest in the boiler and machinery, it was held that a verdict should have been directed in favor of the defendants, for the reason that the plaintiffs understood, when they sold the property, that it was purchased by the vendee for the purpose of attaching it to the realty of the defendants under his contract with them to do so; that with that knowledge they obtained $500 of the defendant's money, and guaranteed the shipment of the machinery for the purpose stated, without notice to or knowledge on the part of the defendants that they still claimed the title to the boiler and machinery.

15. *Hood v. Olin*, 68 Mich. 165, holding that a purchaser of property on condition that it is not to be his until paid for cannot mortgage it in hostility to the rights of the vendor. (See *Wiggins v. Snow*, 89 Mich. 476, 478.)

16. *Sewing Machine Co. v. Bothane*, 70 Mich. 443, holding that a vendee in the lawful possession of a sewing machine under a contract retaining title in the vendor until paid for, and who has nearly paid for the same, cannot be dispossessed by replevin without a prior demand; that in such a case, on waiving a return, the

value of the defendant's interest in the machine should be assessed at the purchase price, less the balance due, with interest from the time the machine was replevied, it appearing that it had lost nothing in value.

17. *Begole v. Stone*, 72 Mich. 71, where the *bona fide* holder of a chattel mortgage replevied the property from a third party, who claimed to have sold it to the mortgagor conditionally, and to have retained the title until the property was paid for. And it was held that the rights of the defendant under such sale should not have been submitted to the jury apart from the circumstances tending to show, as claimed by the plaintiff, that by his conduct the defendant had waived or abandoned his rights to the property.

18. *Button v. Trader*, 75 Mich. 295, where one of two owners of a stock of meats and a meat-market outfit sold his half interest to the other owner upon condition that the title should remain in him until the purchase price should be paid. The purchaser sold the entire property to third parties, who paid a portion of the purchase price with their negotiable note, after which the part owner who had sold his interest to their vendor sued him for the purchase price, and recovered a judgment for the full amount due. And, in a suit upon the note by an alleged *bona fide* purchaser, it was held that by suing and recovering said judgment said part owner elected to confirm the sale of the property to the makers of the note; that he could not thereafter repudiate such election, and maintain a claim to the property; that therefore it made no difference whether the plaintiff had notice before he bought the note of the claim of such part owner or not; and that a verdict should have been directed for the full amount of · the note and interest.

19. *Kendrick v. Beard*, 81 Mich. 182, holding that the following clause in a note given in part payment for a span of horses, immediately following the statement of the sum agreed to be paid, namely, "being balance due on one span of horses bought of him [the payee], said horses to be holden to him as security for payment of this note," is not so certain and unambiguous as to import a mortgage, and not a conditional sale, and parol evidence that the title to the team was not to pass until the horses were paid for is admissible as explanatory of the doubtful language.

20. *Hovey v. Gow*, 81 Mich. 314, where a contract for the sale of lumber provided that it should belong to the vendors until shipped, in the spring of 1889, and when so shipped should be free from any insurance charges or taxes that might be assessed against it. A portion of the lumber was seized to satisfy taxes assessed for 1888 against the vendees, and was replevied by the vendors. And it was held that the contract is unambiguous, and that under it

the vendors remained the owners of the lumber until it was shipped.

21. *Brewery Co. v. Merritt*, 82 Mich. 198, holding that a contract by which a brewing company agrees to ship to a firm all beer ordered by them at an agreed price per barrel, the title to remain in the company until the beer is sold, and by which the firm agree to take and pay for the beer on the conditions named, is valid as to creditors of the firm, and creates a mere agency, under which the firm are to take and sell the beer, and pay over from the proceeds the agreed price per barrel.

22. *Pratt v. Burhans*, 84 Mich. 487, holding that a contract by which the title to goods is to remain in the owner until they are paid for, or sold in the due course of trade, by the person to whom they are delivered, is valid, and such purchasers take a good title, and those who do not purchase in the due course of trade cannot rely upon the bare possession of their vendor as conclusive evidence of title.

23. *Tufts v. D'Arcambal*, 85 Mich. 185, where a contract for the sale of certain soda-water apparatus provided for the retention of title by the vendor until the property should be paid for, and that, in case of the non-payment of either of the purchase-price notes at maturity, the vendor might take possession of the property, but did not provide that such act should operate as a rescission of the contract, or as a forfeiture of the payments made thereon.    On default being made in such payments the vendor replevied the property.    And it was held that such action did not entitle the vendee to rescind the contract, or to recover the amount paid thereon, or to a delivery of the unpaid notes, nor did it give him any lien upon the property for the amount of such payments; that plaintiff was entitled to judgment, and to his damages for the detention of the property; and that upon the payment of the amount due the vendee would have a right to a return of the property.

24. *Wiggins v. Snow*, 89 Mich. 476, holding that a contract of sale which provides that the title to the property shall remain in the vendor until the purchase price is fully paid, but which contains no provision authorizing the vendor to retake possession in case of default, clearly implies that the right of the vendee to possession is dependent upon his making such payment as provided in the contract, and that, in the event of default and demand, the vendor may maintain replevin for the property.

25. *Gill v. De Armant*, 90 Mich. 425, where the owner agreed to sell an undivided half interest in a saw and shingle mill, and it was stipulated in the contract that a failure to pay the purchase price should avoid the contract.    The purchaser went into possession with the vendor, and then sold her interest in the prop-

erty, and her vendee purchased the remaining one-half interest upon a contract which reserved the title to the vendor until the purchase price should be paid, and went into sole possession. After the partial destruction of the property by fire, the second vendee sold a portion of the machinery to certain mill-owners, and they, without the consent of the original vendor, affixed it to their mill. The original vendor replevied said machinery, and on the trial offered the two agreements in evidence, and they were received, in connection with proof that a considerable sum was due and unpaid upon each when the suit was commenced. And, in affirming a judgment in plaintiff's favor, it was held that the title to all of the mill property remained in the original vendor at the time the mill-owners purchased the machinery, and, in the absence of his consent, they could not attach it to their mill so as to make it a part of the realty.

26. *Lansing Iron & Engine Works v. Walker*, 91 Mich. 409, where the owner of an undivided interest in a farm purchased a portable saw-mill. The vendor retained the title and right of possession until the mill should be paid for, but gave the vendee permission to take and use the mill in the township where his farm was situated, and in adjacent townships, so long as he took reasonable care of it, and was not in default in any of the payments provided for in the contract. The vendee made the first payment, and set up the mill on his farm, the boiler being bricked in and arched up, and the engine set upon brickwork and bolted to the foundation, and both being roofed over, while the saw-mill and carriage were uncovered. He afterwards conveyed the farm by quitclaim deed. And in an action of trover, brought by the vendor against the grantee on refusal to pay the remainder of the purchase price, a judgment was entered upon a verdict directed in his favor, which judgment is affirmed.

27. *Powell v. Eckler*, 96 Mich. 538, holding that an agreement for the leasing of a piano at an agreed monthly rental, and for its sale to the lessee at the expiration of the term of the lease upon payment to the lessor of a specified sum, merely gives the lessee the right to the use of the instrument on payment of the rent, with an option to purchase it on the terms stated.

28. *Fuller v. Byrne*, 102 Mich. 461, where a contract for the sale of a piano provided that the instrument should remain the property of the vendor until the purchase price and any judgment rendered thereon should be paid in full. And it was held that the vendor had the right to obtain such judgment, and the title to the piano would not pass until the judgment was paid.