LANSING IRON & ENGINE WORKS *v.* WILBUR.

111   413
115   337

111   413
127   50

111   413
s69NW  667
130   442
111   413
154   ¹692

1. CONDITIONAL SALE—BONA FIDE PURCHASER.

  A purchaser of chattels from one holding the same under a conditional contract of sale obtains no better title than had his vendor, although he buys in good faith, and without notice of the rights of the original vendor.

2. FIXTURES—WHAT CONSTITUTE—HOW DETERMINED.

  The controlling principle in determining whether chattels annexed to real estate have become fixtures is the intention of the parties between whom the question arises; and the mode of annexation and manner of use are not necessarily conclusive, but yield to such intent.

3. SAME—EVIDENCE.

  Plaintiff sold to W. an engine and boiler under a contract by the terms of which the title was retained by plaintiff until the property should be fully paid for. W. set up the machinery, in a substantial manner, on land held by B. under a contract with a land company for its purchase; the engine being bolted to a stone foundation, and the boiler arched over with brick, and connected by rods with the outer walls of the building. B. forfeited his contract to the land company, which had previously obtained a bill of sale of the boiler and engine from W. Defendant, who held a chattel mortgage given by W. upon the property

in question, purchased the realty, supposing that she would thereby acquire title to the machinery as fixtures. *Held,* that the property retained its character as personalty, the title to which was in the plaintiff.

Error to Ionia; Davis, J. Submitted November 11, 1896. Decided January 5, 1897.

Trover by the Lansing Iron & Engine Works against Hannah C. Wilbur. From a judgment for plaintiff on verdict directed by the court, defendant brings error. Affirmed.

*McGarry & Nichols,* for appellant.

*Harris E. Thomas,* for appellee.

LONG, C. J. December 12, 1891, George P. Booth and Randall T. Van Vaulkenburg, who were stockholders in the Belding Chemical Fire Engine Company, entered into a land contract and agreement with the Belding Land & Improvement Company of Belding for the purchase of certain lots. It was agreed:

*First.* That Booth and Van Vaulkenburg should have immediate possession.

*Second.* That Booth and Van Vaulkenburg should erect, within six months, upon the premises, a brick factory two stories high, 50 feet wide, and 150 feet long, for the purpose of manufacturing chemical engines, etc.

*Third.* That the Belding Land & Improvement Company, upon the completion of the building, and upon the boiler and engine being set in the building, should pay Booth and Van Vaulkenburg $5,000 in cash.

*Fourth.* That Booth and Van Vaulkenburg should cause to be employed a daily average of 35 men per year for four years next ensuing after said six months.

*Fifth.* That, upon all these conditions being performed by Booth and Van Vaulkenburg, the Belding Land & Improvement Company should, at the expiration of five years, give to Booth and Van Vaulkenburg a warranty deed of the premises, but that, in case they failed to perform any of the conditions, the Belding Land & Improvement Company should have the option to declare the

contract void, and should have the right to re-enter and repossess the premises, but upon the condition that, if it exercised such option, Booth and Van Vaulkenburg were to have the right to remove from the premises all machinery, boilers, engines, shafting, tools, etc., and that they were to have a reasonable time for that purpose.

In August, 1892, the Belding Land & Improvement Company claimed that the work had not progressed as rapidly as agreed, and refused to pay over the $5,000 until the words "boilers" and "engines" were stricken out of the fifth paragraph of the contract, and it be given a bill of sale of the boiler and engine, to be used in the building, by Wiennett & Bauer, from whom Booth and Van Vaulkenburg had purchased them. The contract was so modified, and the bill of sale given. The building was completed, and the boiler and engine placed therein. Some time during the summer of 1892, the defendant had loaned to Wiennett & Bauer something over $2,000, and had taken a note therefor, and in the month of December she took as security from them a chattel mortgage upon certain personal property, including this boiler and engine. Thereafter she took two bills of sale of this property covered by the mortgage, but did not include the boiler and engine. A few days afterwards, and on January 9, 1893, the defendant, who had not learned until then that the boiler and engine were left out of the bills of sale (said bills of sale having been taken for her by her son), was advised that the Belding Land & Improvement Company claimed them as a fixture, that company having gone into possession of the property at that time. The defendant thereupon purchased the whole of the plant from the Belding Land & Improvement Company, taking a warranty deed therefor, and went into immediate possession. Wiennett & Bauer had purchased this boiler and engine from the Lansing Iron & Engine Works, the plaintiff in this case, under a written contract, by the terms of which the title and right of possession were retained by the Lansing Iron & Engine Works until the property

was fully paid for. Wiennett & Bauer having failed to make payments under the contract, the plaintiff made inquiry in reference to the boiler and engine, and for the first time learned that the defendant claimed title. Demand was made upon her for the property, which she refused to surrender, and this action was brought in trover to recover its value.

In the contract between plaintiff and Wiennett & Bauer, it was provided that the boiler and engine and fixtures therewith should be used in Belding, Ionia county, and that the vendees were to retain the use so long as they took reasonable care of the machinery, and were not in default in payments; but in case of default or failure of payment of any part of the price, or interest thereon, at the time and in the manner specified in the contract, or if the vendees should attempt to sell, assign, or dispose of the same, or remove, or attempt to remove, the same from Belding, that the Lansing Iron & Engine Works might take the property into its possession, and retain it as its property, or sell it at private sale, and apply the proceeds on-the contract.

The manner in which the boiler and engine were placed in the building at Belding is described by Mr. Barnes, the president of the plaintiff company, as follows:

"We found the boiler and engine located in the large brick building at Belding. The boiler was bricked in, or arched in with brick. Could not say whether the arch formed a part of the side of the building against which the boiler set, or not; but the arch that covered the boiler was connected with the outside wall of the building. The boiler room in which this boiler was placed was all brick, and joined onto the main building. I think the boiler could have been taken out of the door without removing any of the outside walls, although the foundation and arches over the boiler would have to be torn down; also, the smokestack that goes through the roof would have to be removed. This boiler and engine were placed in the building as permanently and solidly as ever I saw a boiler and engine placed in a building."

On the trial, it was disputed whether or not the boiler could be taken out of the building without injuring the outside walls, some of the witnesses testifying that it could, and others that it could not.   It appears, however, that the engine was placed upon a stone foundation, and fastened with rods and bolts which went down through the foundation and clinched at the bottom; that the boiler was arched over with bricks, with rods running through the boiler, and stayed by cleats on the outside of the building to the outside of the arch over the boiler on the inside of the building; also, that there was a smokestack that went up through the roof, which would have to be taken down to take the boiler out. There were steam pipes running from the boiler, through the brick walls, connected with the engine, and connected also by belts, pulleys, and other machinery with the engine.   It also appears from the testimony of Mr. Clark, who made the contract on behalf of the Lansing Iron & Engine Works with Wiennett & Bauer, that he had been told by them where the engine and boiler were to be placed, and for what purpose; and the testimony of Mr. Barnes shows that the plaintiff furnished blue prints to purchasers, showing how engines and boilers should be set, and that these in question were set according to the prints, and that this boiler and engine were not portable.

At the close of the testimony in the case, the court charged the jury as follows:

"Now, gentlemen, a title can be surrendered upon notice of forfeiture, but this gave the improvement company no better title than Booth and Van Vaulkenburg obtained from Wiennett & Bauer.   They had treated it as personal property.   This lady, the defendant in this case, claims that she had a chattel mortgage upon this property, taken soon after it was put in this building. That, in the judgment of the court, was notice to her of the character of the property, and she could not come in here, and contend she was an innocent purchaser of the

111 MICH.—27.

property, by reason of afterwards obtaining a deed of the real estate upon which this property stood. So, I say to you, gentlemen of the jury, that, under the undisputed evidence in this case, your verdict must be for the plaintiff."

The court further charged:

"There is no question in this case but what the title to that property was reserved, and is now in the Lansing Iron & Engine Works."

Under this charge, verdict and judgment were entered in favor of the plaintiff. Defendant brings error.

The only question in the case is whether, under the facts here stated, this boiler and engine are to be treated as personalty, or whether they became so affixed to the realty that they passed to the defendant under the deed taken by her from the Belding Land & Improvement Company. The controlling principle in determining the question of fixtures is the intention of the parties. It is well settled in this State that the vendor may retain title to personal property sold until paid for, and that the vendee cannot, before his title becomes absolute, pass a good title, and that the good faith of a purchaser from the vendee is immaterial. Nor is the question of notice of the vendor's rights material. *Lansing Iron & Engine Works* v. *Walker*, 91 Mich. 409 ( 30 Am. St. Rep. 488 ); *Gill* v. *De Armant*, 90 Mich. 430; *Thirlby* v. *Rainbow*, 93 Mich. 164; *Marquette Manufacturing Co.* v. *Jeffery*, 49 Mich. 283; *Pettyplace* v. *Manufacturing Co.*, 103 Mich. 155, and note.

In the first case cited, the plaintiff sold to one Myers a boiler, engine, and fixtures under a similar contract to the one in controversy, retaining the title until the property was paid for. The property was to be removed to the township of Sandstone, and was taken there. The boiler was bricked in and arched up, and the engine was set upon brickwork, and bolted down to the foundation. Myers owned an undivided interest in the real

property where the boiler and engine were placed.    About a year after the boiler and engine were placed in this mill, Myers conveyed the real estate by quitclaim deed to the defendant.    Payments became due under the contract.    Thereafter demand was made for the boiler and engine.    Defendant refused to surrender them, and trover was brought to recover the value of the property.    The court directed verdict for the plaintiff for the balance due on the contract.    The defendant contended that the case should have been submitted to the jury upon the question of fact raised by the testimony as to whether the purchase made by the defendant from Myers was in good faith, for a valuable consideration, and without notice of the claim of plaintiff against the property purchased.    The court refused to give such request.    It was said by this court:

"There was nothing done by plaintiff indicative of an intent to permit the machinery to be so annexed to the realty as to change its character.    The state of the title to the realty, and the conduct of Myers regarding the machinery, negatived any intent on his part to allow his interest in the machinery to be absorbed by the owners of the realty, or to permit it to be merged.    The circumstances of the purchase by defendant clearly indicate that he took the entire interest in this machinery, while he took but an undivided interest in the realty."

The judgment was affirmed.    It was held in that case that it was ruled by *Adams* v. *Lee*, 31 Mich. 440, and *Robertson* v. *Corsett*, 39 Mich. 777.    In the first of these cases it was said by this court:

"All the time, therefore, the parties have had title to the machinery distinct from their title to the land, and this fact of itself is conclusive that the former was personalty; for, to constitute a fixture, there must not only be physical annexation in some form to the realty, but there must be unity of title, so that a conveyance of the realty would of necessity convey the fixture also.    When the ownership of the land is in one person, and of the thing affixed to it is in another, and in its nature is capable of severance without injury to the former, the latter

cannot, in contemplation of law, become a part of the former, but must necessarily remain distinct property, to be used and dealt with as personal estate only.   And the fact that the owner of the thing affixed to the freehold has also an undivided interest in the latter cannot render the former a fixture when the interests are different in extent.   A thing cannot, as to an undivided interest therein, be real estate, and as to another undivided interest be personalty.   It must be the one thing or the other. And the position which is taken by Lee in this case involves this absurdity: That Kaufman, at the time when he and Kinney were severally the owners of an undivided half of the land, might have sold that, and, as a necessary consequence, transferred an undivided one-half of the machinery also, though the whole of the machinery belonged to Kinney as exclusive owner.   This would be the necessary result if the machinery was real estate, for there could be no such a thing as attaching it to an undivided interest in the land only."

In the present case, every person connected with the matter, at some time during the dealing, regarded and treated this machinery as personal property, and not as a fixture.   At the time of the sale to Wiennett & Bauer, they had no interest in the realty.   They placed the machinery in position in the mill, the title to the mill being in Booth and Van Vaulkenburg under their contract with the Belding Land & Improvement Company.   Booth and Van Vaulkenburg forfeited their contract, and the company took possession of the land, not with the understanding that this machinery belonged to and was a part of the realty, but that the title to it was in Wiennett & Bauer, from whom it demanded that a bill of sale should be given.   The defendant also regarded the machinery as personal property, as she took a chattel mortgage from Wiennett & Bauer on it as security for her debt from them, though afterwards, and without her knowledge, her son, in taking the bills of sale of the property, left out the boiler and engine.   It is undoubtedly true that she presumed, in making the purchase of the realty from the Belding Land & Improvement Company, that she was

acquiring title to the boiler and engine; but we think there is nothing in the case which indicates that it was the intent of any of the parties that this machinery should be so annexed to the realty that it should become a part of it. As was held in *Wheeler* v. *Bedell*, 40 Mich. 693, there is no universal rule by which the character of what is claimed to be a fixture can be determined in the abstract. Neither the mode of annexation nor the manner of use is in all cases conclusive. It must usually depend on the express or implied understanding of the parties concerned. In *Coleman* v. *Manufacturing Co.*, 38 Mich. 30, the court, commenting upon the line of authorities which seems to regard the manner of attachment to the realty as the test, say: "This, however, is a very extreme view, and is hardly compatible with the tenor of our own previous decisions." If the manner in which the boiler and engine were attached were to be treated as the sole test, there might be some force in defendant's contention; but in view of the fact that there was never unity of title of the realty and the personalty in one and the same person or persons, and of the manner in which the property has been dealt with, together with the respective interests, we are compelled to hold that the defendant did not acquire title under her deed from the Belding Land & Improvement Company. The court was therefore correct in directing verdict and judgment in favor of the plaintiff.

The judgment must be affirmed.

GRANT, MONTGOMERY, and HOOKER, JJ., concurred. MOORE, J., did not sit.