## HARRIS *v.* HACKLEY.

1. FIXTURES—MACHINERY—CONDITIONAL SALE.

Where machinery sold under a written contract retaining title in the seller until paid for was placed by the purchaser in a building held by him under a contract of purchase providing that, in the event of forfeiture, the vendor should be entitled to a surrender of the property with all improvements, but the machinery was not attached to the building, it did not become a part of the realty.

2. TROVER—DEMAND.

Where plaintiffs sold an engine and seven machines, designed for use in the manufacture of bolts, nuts, and washers, under a written contract retaining title in themselves until paid for, and, on failure of payment, described the machinery, in demanding it of a third party, as "one engine, nut machine, bolt machinery, and washer machinery," the demand was sufficient to support an action of trover.

3. SALE—PASSING OF TITLE.

The inclusion of mill machinery contracted to A. in a consignment of scrap iron to B., and payment by B. therefor as scrap iron, will not pass title to the machinery to B., where neither he nor the seller had any such intention.

Error to Muskegon; Russell, J. Submitted March 8, 1901. Decided June 4, 1901.

Trover by Abraham Harris and Marks Harris, copartners as Harris Bros., against Charles H. Hackley. From a judgment for plaintiffs, defendant brings error. Affirmed.

*Smith, Nims, Hoyt & Erwin,* for appellant:

The machinery became a part of the realty, and was covered by the land contract. *O'Brien* v. *Kusterer,* 27 Mich. 289; *Knowlton* v. *Johnson,* 37 Mich. 47; *McAuliffe* v. *Mann,* Id. 539; *Wickes Bros.* v. *Hill,* 115 Mich. 333 (73 N. W. 375); *Watson* v. *Alberts,* 120 Mich. 508 (79 N. W. 1048); *Hunt* v. *Iron Co.,* 97 Mass. 279; *Trull* v. *Fuller,* 28 Me. 545; *Corliss* v. *McLagin,* 29 Me. 115; *Fryatt* v. *Sullivan Co.,* 5 Hill, 116; *McRea* v. *Bank,* 66 N. Y. 489; *Overton* v. *Williston,* 31 Pa. St. 155; *Bringholff* v. *Munzenmaier,* 20 Iowa, 513; *Burnside* v. *Twitchell,* 43 N. H. 393.

*Bunker & Carpenter* (*Robert S. Kolliner,* of counsel), for appellees:

Cited to the contrary: *Adams* v. *Lee,* 31 Mich. 440; *Robertson* v. *Corsett,* 39 Mich. 777; *Wheeler* v. *Bedell,* 40 Mich. 693; *Ferris* v. *Quimby,* 41 Mich. 202 (2 N. W. 9); *Bewick* v. *Fletcher,* 41 Mich. 625 (3 N. W. 162, 32 Am. Rep. 170); *Manwaring* v. *Jenison,* 61 Mich. 117 (27 N. W. 899); *Aldine Manfg. Co.* v. *Barnard,* 84 Mich. 632 (48 N. W. 280); *Lansing Iron & Engine Works* v. *Walker,* 91 Mich. 409 (51 N. W. 1061).

Title to the machinery did not pass to Jennings, there never having been a mutual agreement to that effect. *Gardner* v. *Lane,* 9 Allen, 492 (85 Am. Dec. 779); *Chapman* v. *Cole,* 12 Gray, 141 (71 Am. Dec. 739); *Huthmacher* v. *Harris' Adm'rs,* 38 Pa. St. 491 (80 Am. Dec. 502); *Utley* v. *Donaldson,* 94 U. S. 29; *Sherwood* v. *Walker,* 66 Mich. 568 (33 N. W. 919, 11 Am. St. Rep. 531); *Rupley* v. *Daggett,* 74 Ill. 351; *Hogue* v. *Mackey,* 44 Kan. 277 (24 Pac. 477).

MONTGOMERY, C. J. This is an action of trover to recover the value of one engine and seven machines designed for use in the manufacture of bolts, nuts, and washers, which were delivered to the Consolidated Rail-Joint Com-

pany, of Muskegon, Mich., under a written contract of sale by the terms of which the title remained in the plaintiffs until the goods were paid for. The vendee occupied a building belonging to defendant, under a contract of purchase by the terms of which, in the event of forfeiture, defendant was entitled to a surrender of the property, with all improvements. The machines were of sufficient weight to be held in place by their own gravity, and were not spiked or bolted to the building. The engine was an upright structure, to place which an excavation was made in the ground, in which were placed timbers, drift-bolted together, for a foundation, to which the engine was fastened by bolts.

The engine and machinery were shipped by plaintiffs to one Edwin B. Jennings, together with a shipment of scrap iron, which Jennings proposed to have manufactured into bar iron by the Consolidated Rail-Joint Company; and it is claimed that Jennings paid for the machinery, as scrap iron, at $10.50 per ton. This shipment of scrap iron was one of several made by plaintiffs to Jennings in September and October, 1897. Drafts were made on the heels of each shipment, and paid by Jennings. A statement of account sent by plaintiffs to Jennings on November 15, 1897, after the shipments were completed, and which, it is claimed, shows that no deductions were made for the weight of the machinery, shows a balance against Jennings of $440.54, and there is no testimony that this balance was paid. The bill of lading for this shipment is dated September 29, 1897, and the corresponding draft September 30th. The total of charges for scrap iron, to and including this shipment, is about $300 greater than the total of credits to this date, consisting of drafts and freight paid by Jennings. Jennings never took any steps to assert title to the machinery, and his agent for the purchase of the scrap iron had notice that the machinery was shipped in the same cars with the scrap, while Caldwell, the president of the Consolidated Rail-Joint Company, who testified that he acted as Jen-

nings' agent in weighing the cars of scrap as they were received, had notice of the entire transaction. The jury answered the following special questions in the negative:

1. Was the engine and machinery in question weighed, shipped, and billed by Harris Bros. to Jennings as scrap iron?

2. Was the engine and machinery in question received and paid for by Jennings as scrap iron?

Defendant made a motion for a new trial on the ground that the verdict and the answer to each of these special questions were palpably against the weight of the evidence. The motion was denied.

The court held, as a matter of law, that the correspondence between the parties, which was introduced in evidence, showed a demand for the machinery on the part of the plaintiffs, and a refusal by the defendant. Defendant claims that this was error, for the reason that plaintiffs' letters described the machinery as "one engine, nut machine, bolt machinery, and washer machinery," while the contract of sale and the declaration describe seven distinct and separate machines in addition to the engine. The language above quoted correctly describes the machinery in a general way.

The questions presented are:

1. Was the court right in refusing to submit to the jury the question of whether the machinery became part of the realty?

2. Did the undisputed testimony show a sufficient demand and refusal?

3. Should the court have granted a new trial on the ground that the finding of the jury that the machinery did not belong to Jennings was against the weight of the evidence?

We think there was no error committed in instructing the jury that the machinery remained personal property. Indeed, the brief of counsel for the defendant concedes that, as between the plaintiffs and the Consolidated Rail-Joint Company, the engine and machinery remained personal

property. But it is insisted—and a request to charge was along this line—that if it was the intention of the Consolidated Rail-Joint Company to make the engine and machinery a part of the plant or mill, and essential to its use, and Harris Bros. knew of this intention, and the engine and machinery were so placed by the Consolidated Rail-Joint Company, it became real property. It is apparent that to so hold would be doing violence to the expressed intention and agreement of the parties. The cases in this court are full of expressions to the effect that, where machinery may be removed from a building without damage to the remainder of the property, the intent of the parties is controlling. There could be no clearer expression of an intention than an agreement that the property should remain the property of the vendors, although placed in the possession of the proposed purchaser. See *Manwaring* v. *Jenison*, 61 Mich. 117 (27 N. W. 899); *Lansing Iron & Engine Works* v. *Wilbur*, 111 Mich. 413 (69 N. W. 667). The case is not one in which the attachment to the real estate is of such a nature that it could not be removed without material injury to the remaining property, nor is it a case in which the claims of a *bona fide* purchaser are involved. It is true that Hackley stood in the position of an equitable mortgagee of the real estate, being a contract vendor; but he was a prior mortgagee, and did not take his security upon the faith of any appearance that this property was a part of the real estate.

As to the question of demand, without stating further at length the correspondence between the parties, we think it sufficiently clear, from the whole tenor of the correspondence, that the defendant fully understood what property was demanded, and that he declined to deliver it up.

We think there was no error committed by the court in refusing a new trial. A careful reading of the record fails to satisfy us that there was any evidence tending to show that Harris Bros. intended that the title to this property should pass as scrap iron, or that Jennings ex-

pected that he was acquiring title to the property as scrap iron. The instructions to the jury were sufficiently favorable to the defendant, and we think the correct result was reached.

The judgment will be affirmed.

HOOKER, MOORE, and GRANT, JJ., concurred. LONG, J., did not sit.