FIRST COMMERCIAL & SAVINGS BANK OF WYANDOTTE
v. TRENTON MILLING CO.

1. FIXTURES—CHARACTER—INTENTION OF PARTIES.
　The intention of the parties controls in determining the character of the property which is claimed to be a fixture.

2. SAME — BETWEEN VENDOR OF CHATTELS AND MORTGAGEE OF LAND.
　Machinery ordered by mortgagors in possession of a mill, to be put in the mill for the purpose of increasing its capacity, but not paid for, is, before its acceptance by the mortgagors and its permanent attachment to the premises, removable by the sellers with the consent of the mortgagors, as against the mortgagee whose security was not taken with reference to the machinery as a part of the real estate; no injury to the freehold having occurred from the machinery being brought onto the premises.

Appeal from Wayne; Hosmer, J. Submitted January 12, 1906. (Docket No. 60.) Decided May 24, 1906.

Bill by the First Commercial & Savings Bank of Wyandotte against the Trenton Milling Company, Arthur G. Judkins, Eleanor A. Judkins, William B. Park, the Harmon-Whitmore Company, and Sprout, Waldron & Company, to foreclose a land contract, and to restrain the removal of certain machinery. Defendant Sprout, Waldron & Company filed an answer in the nature of a cross-bill to enjoin complainant and defendant Trenton Milling Company from disposing of the machinery. From a decree dismissing the bill and granting the prayer of the cross-bill, complainant appeals. Affirmed.

*Charles H. Marr* and *Orla B. Taylor*, for complainant.

*Anderson & Rackham*, for defendants Sprout, Waldron & Co. and Harmon-Whitmore Co.

McAlvay, J.    Defendant Judkins, having for several years operated under a land contract of purchase a certain flouring mill, on January 29, 1901, bought the property and received a deed therefor.    It was situated in the village of Trenton, Wayne county.    To make his final payment he borrowed from complainant bank $2,000, and to secure such loan, and further loans which might thereafter be made by complainant to him to an amount not exceeding $2,500, Judkins and wife, on January 31, 1901, gave a warranty deed of said premises, including the flour mill building, machinery, engine, etc., to complainant, taking back an agreement in the nature of a land contract that the said premises would be reconveyed to him upon the repayment of all sums loaned as aforesaid according to the terms of the promissory notes representing the same, together with interest, insurance, and taxes, and other conditions usual in land contracts.    The deeds were both recorded March 1, 1901.    The contract was not recorded. Judkins, who continued in possession of the property, soon took defendant Park into partnership with him under the firm name of Judkins & Park.    On April 19, 1901, they borrowed an additional $1,000, giving Judkins' note indorsed by Judkins & Park.    On May 20, 1901, they borrowed $1,000, giving a similar note, and on August 5, 1902, they borrowed $400, giving Judkins' note indorsed by Park, making the total amount borrowed from the complainant bank $4,400.    This was a custom flouring mill about 40 years old.    The partnership business was not successful, and Judkins withdrew, turning the contract over to Park with a verbal agreement that when Park secured his release from all obligations to the bank he would assign it to him.    This occurred in 1903, and before August of that year.    The bank was not a party to the transaction, but it had knowledge of the withdrawal of Judkins.    The mill did not run after January 1, 1903. Park interested certain parties in this property, who, together with him, organized defendant Trenton Milling Company, a Michigan corporation, which went into pos-

session as successors of Park.    On September 17, 1903,
complainant bank filed its bill in the Wayne circuit court,
in chancery, to foreclose the said land contract against
Judkins and wife, Park, and the Trenton Milling Com-
pany, as defendants, which foreclosure suit was pending
and undetermined at the time of the commencement of
the suit at bar.    After the Trenton Milling Company was
organized and the foreclosure suit begun, some negotia-
tions were had between the officers of the milling com-
pany and complainant bank relative to an extension of
time on the indebtedness to the bank, a discontinuance of
the foreclosure suit, in case insurance, interest, and back
taxes were paid, and the milling company to make im-
provements upon the property.    There is a sharp dispute
in the testimony upon this matter; the milling company
insisting that such an agreement was entered into between
it and the bank, and that, relying upon it, interest, taxes,
and insurance were paid by it to the amount of $349.67,
and $1,500 in cash was expended in renovating and im-
proving the flouring mill.    Complainant denies that such
agreement was made.    The defendant Trenton Milling
Company, October 15, 1903, entered into an agreement in
writing with defendant Sprout, Waldron & Co., for the
purchase of certain flouring mill machinery and material,
to the amount of $1,064, to be accepted and paid for on
certain terms when the same was operated so as to fulfill
the milling guaranty provided in the agreement.    On or
about October 1, 1903, defendant milling company or-
dered from defendant Harmon-Whitmore Company cer-
tain other milling machinery and material for said mill, to
the amount of $403.60, which was shipped to and delivered
at the mill in October and November following, on 30
days' trial and 60 days' time.    Nothing was paid on either
of these lots of machinery and material furnished by these
defendants.

The milling company, ascertaining that the foreclosure
suit had not been discontinued, and being unable to mar-
ket its stock on that account, informed both of these de-

fendants of that fact and a representative of each came to Trenton. At this time none of this machinery had been operated or tested. Some of it was in crates and bundles in the mill. Some of the machines had been put into position, but not permanently attached to the premises. Some of it was standing in the mill not in position. None of it was connected up for use. The milling company made no claim to this property, and gave to each of these defendants an agreement in writing relative to removing the same.

Complainant bank, upon learning that they were about to take the machinery away, filed its bill of complaint in this case, setting up the facts herein related as to its relation to the property and its security thereon, the pendency of the foreclosure proceeding; alleging that, since the execution of the deed to it, Judkins, Park, and the milling company had been in possession operating the mill, that they had taken steps to put in new machinery, and to that end had removed a considerable quantity of old machinery, which, however, was fitted for the purpose of manufacturing flour, and put in new machinery for the same purpose, that the kind of machinery or the nature of the contracts of purchase from the companies furnishing the same was not known, but that said companies claimed title thereto, that the old machinery was taken out to furnish space for the installation of the new, that if the new machinery is removed the character of the property as a grist mill will be destroyed, that the same has been so attached to the realty that it has become a part thereof, and that the vendors claim such machinery and threaten to remove the same, in violation of the rights and interests of complainant, and to its great damage, and the damage of the property; praying for an injunction to prevent the removal of the machinery, and that such machinery may be decreed to be a part of the premises and held to be security for complainant for the performance of the terms and conditions of the land contract. A preliminary injunction was granted as prayed for.

Issues were joined upon the answer of defendant Harmon-Whitmore Company, and the answer and cross-bill of defendant Sprout, Waldron & Co., upon which an injunction had issued against defendant milling company and its officers. The cause was heard before the court, and a decree was granted dissolving the injunction in favor of complainant, and dismissing the bill of complaint, and making permanent the injunction in favor of defendant Sprout, Waldron & Co. declaring the machinery delivered by it to the milling company to be personal property belonging to said defendant, and decreeing the same as to the property of Harmon-Whitmore Company, and the right and privilege of both defendants to enter upon the premises and remove their property.

Upon this appeal we are asked to reverse this decree, upon the ground that the machinery and materials in question became and were part of the realty, subject to the conditions of complainant's contract. The relations of the complainant and all defendants, except those who claim this property in dispute as recognized by complainant in its foreclosure proceedings, are those of mortgagor and those holding under him in possession, and mortgagee. While it is true that, as far as the record shows, there had been no written assignment by Judkins to the other defendants holding under him of his interest in the premises under the land contract, yet the complainant had knowledge of their relations, and the possession of the property by defendants Park and the milling company, and had recognized whatever rights they had by receiving from them interest, insurance, and taxes claimed under the contract. There is abundant proof in the record to show that complainant did agree with defendant milling company, as claimed, to discontinue the foreclosure proceeding and extend the time of payment for one year, if interest, insurance, and taxes were paid, and improvements were put upon the property. That this was done is not disputed. Complainant bases its contention upon the claim that this was a going mill,

that by taking out certain old machinery, if the new machinery to be substituted for it is not to remain, it is made a dead property, and its security is greatly depleted. If the proposition were supported by the facts, there might be force in the contention. The proofs show that this mill had been run at least 40 years; that the machinery was worn and out of date; that the changes made upon the old machinery and the additions by way of repairs and new shafting added to instead of decreased the value of this property. Complainant knew that changes were being made and money expended in improving this property and consented thereto. The machinery in dispute was to be put in the mill for the purpose of increasing its capacity. It was negotiated for upon representations on the part of the milling company relying upon its agreement with complainant. The good faith of the parties is apparent. In the case of Sprout, Waldron & Co. there was a written guaranty of performance, the property not to be accepted and paid for until after the test made; and in the case of Harmon-Whitmore Company a verbal guaranty upon 30 days' trial. Neither of the lots of machinery was accepted under the agreements by the milling company, and permission was given to remove the same. When this permission was given much of this property was standing in the mill in crates and bundles as received from the shippers. Some had been uncrated and was standing on the floors of the mill. Some had been placed in position, but was not attached permanently to the premises. This was machinery and material manufactured for the trade, ready to be installed with but little trouble and expense. As between the sellers and purchaser of this property, it clearly appears that no title had passed; that the property had not been so attached to the realty as to become a part of it. This situation was recognized by both vendors and vendees when permission was given to remove it. The intention of these parties is perfectly clear, and in this State it has been held

144 MICH.—13.

that the intention of the parties must control in determining the character of the property which is claimed to be a fixture. *Wheeler* v. *Bedell*, 40 Mich. 693.

It remains to be determined whether any rights of complainant mortgagee intervene, and are paramount to the rights of the vendors of this property. We think they do not. Defendant milling company's relation to the premises was that of a mortgagor in possession. Complainant, as a contract vendor, was an equitable mortgagee. It did not take its security with reference to this property as part of the real estate, and no claim can be made on that ground. *Harris* v. *Hackley*, 127 Mich. 46. Considering the fact that all of the old machinery of any value to the mill is still there, repaired, and in better condition and position than before, that new shafting has been put in, and repairs have been made of about $1,500—all done with the consent and acquiescence of complainant—it appears to us that the property has been largely increased in value, and that complainant's contention to the contrary is without foundation. No title to this property having passed to the milling company, and it never having become attached to and a part of the realty, complainant acquired no right or interest therein.

The decree of the circuit court is affirmed, with costs.

GRANT, BLAIR, MONTGOMERY, and OSTRANDER, JJ., concurred.