(No. 22485.—

THE NATIONAL BANK OF THE REPUBLIC *vs.* THE WELLS-JACKSON CORPORATION *et al.*—(GEORGE A. McKINLOCK, Defendant in Error, *vs.* THE PHILLIPS COMPANY, Plaintiff in Error.)

*Opinion filed October 24, 1934—Rehearing denied Dec. 13, 1934.*

DeYoung, Farthing and Shaw, JJ., dissenting.

Altheimer, Mayer, Woods & Smith, and Cutting, Moore & Sidley, (Walter B. Smith, William F. Struckmann, Edwin C. Austin, Kenneth F. Burgess, and John Paulding Brown, of counsel,) for plaintiff in error.

Defrees, Buckingham, Jones & Hoffman, (Don Kenneth Jones, of counsel,) for defendant in error.

Mr. Justice Herrick delivered the opinion of the court:

On May 10, 1928, George A. McKinlock, the defendant in error herein, as the lessor, made a written lease of certain premises situated in the city of Chicago to Noel E. Durand and F. C. Foltz, as lessees, for a term commencing January 1, 1929, and continuing for ninety-nine years, unless sooner terminated by the terms of the lease. All rentals were payable in quarterly installments in advance. The lease was filed for record in the recorder's office of Cook county on February 4, 1929. On November 30, 1928,

Durand and Foltz executed a written assignment of the leasehold interest to the Wells-Jackson Corporation, the lessor consenting to the assignment upon the condition that Durand and Foltz remain liable for the full payment of the rent and the performance of all the covenants contained in the lease to be kept by the lessees. On January 1, 1929, the Wells-Jackson Corporation, to secure an issue of bonds in the aggregate amount of $540,000, made and delivered a certain deed of trust on such leasehold interest to the National Bank of the Republic of Chicago as trustee. A junior deed of trust to secure a junior issue of bonds was also made upon such leasehold to the Chicago Title and Trust Company as trustee. On September 11, 1930, the National Bank of the Republic, as such trustee, filed its bill to foreclose the trust deed to it. On October 24, 1930, an amendment was made to the bill, by which certain unknown owners of the bonds secured by the trust deed to the Chicago Title and Trust Company, together with B. E. Phillips and E. J. Phillips, partners as Phillips & Co., were made defendants. McKinlock filed his answer to the bill as amended and on December 14, 1931, filed his cross-bill. By it he alleged that the Wells-Jackson Corporation had defaulted in the payment of the rentals due; that he had given sixty days' notice of such default, and that he would declare the terms of the lease ended and take possession of the property, including the buildings, unless such rent was paid within the sixty-day period; that the rent was not paid, and that on July 30, 1931, he had declared the lease forfeited and determined; that by reason of the default and declaration of the termination of the lease of the property he had become entitled to the possession of the premises and the buildings as of his own property, freed of the leasehold estate and the several liens of the trustees in the trust deeds and other liens claimed against the property. The cross-bill prayed that the fee simple title to the real estate, buildings and improvements be quieted

and established of record in McKinlock, freed and clear of the liens of such trust deeds and all liens on or attaching to the leasehold estate, including the claim of Phillips & Co.

The Phillips Company, plaintiff in error herein, which has succeeded to the rights of Phillips & Co., a partnership, answered the cross-bill. In its answer it averred that Phillips & Co. had made a contract lease with the Wells-Jackson Corporation as lessee, under which Phillips & Co. had installed a system of automatic fire sprinklers in the building on the leasehold estate; that by the lease the lessee agreed to pay the lessor an aggregate amount of $45,950, payable annually in advance in annual installments of $9190, with interest at seven per cent; that the contract with the Wells-Jackson Corporation specifically provided that the sprinkler system should not become a fixture but should be and remain personal property, and that the title and right of possession thereto, subject to the terms of the contract, should remain in the lessor, and that if default be made in any payment or other provision of the lease, Phillips & Co., or its assigns, might resume possession of the system whether attached to the realty or not, which system the Wells-Jackson Corporation agreed to deliver to Phillips & Co. on demand. The lease contained the further provision that Phillips & Co. should have the right to enter the premises for the purpose of removing the system, provided, however, that upon full payment of the rental the lessor would make an absolute sale and deliver the sprinkler system to the lessee. The answer averred the assignment of such lease to the Phillips Company; that the Wells-Jackson Corporation had defaulted in its payments, and that the Phillips Company had elected to declare, and had declared, the sprinkler system installed to be its property, and had demanded from McKinlock that he turn over to it the sprinkler system, which he had neglected and refused to do; that McKinlock had taken possession of the system on November 1, 1931, had converted the same to

his own use and had continued since that time to operate the building as a public garage. The answer prayed, as a condition precedent to the entry of a decree as prayed by McKinlock in his cross-bill, that he be required to pay the Phillips Company the full amount, with interest, due to it under such lease or conditional sales contract.

McKinlock by leave of the court filed his intervening petition in the proceeding to foreclose the trust deed, in which he set up substantially the same matters as were averred in his cross-bill. The cause was heard by the chancellor and a decree was entered to the effect that the equities of the cause were with McKinlock, the cross-complainant, and that the Phillips Company had no right, title or interest in or to the sprinkler system and had no valid claim against McKinlock for compensation for such system, and established the title of record in fee simple and the right of possession to the real estate, with all the buildings and improvements thereon, in McKinlock, free and clear of all liens, claims and encumbrances, of whatever kind and nature. From that decree the Phillips Company prosecuted its appeal to the Appellate Court for the First District, where the decree of the trial court was affirmed. The cause comes to this court for review on writ of *certiorari* granted on the petition of the Phillips Company.

The lease between McKinlock, Durand and Foltz provided that Durand and Foltz, as security for the rents reserved by the lease, would erect and construct upon the demised premises "a building suitable in its entirety for a garage and/or offices and/or mercantile purposes," the building to be not less than six stories in height above the street grade of Wells street, to cost not less than $600,000, to be of fireproof construction, and to be built to conform to the laws and ordinances in force in the city of Chicago at the date of the construction thereof as a completed structure, construction work to begin prior to May 1, 1929, and the building to be completed for occupancy not later

than December 31, 1931, Durand and Foltz to pay the expenses of the construction of the building, and to keep the demised premises, and the buildings situated thereon, freed and clear of all liens in any way arising from the construction of the building. Another provision of the lease was that the lessees would not enter into any contract for labor, services or materials to be used in the construction of the building which involved an amount in excess of $5000 unless it should be stipulated in and be a condition of the contract that·no lien should attach, on account of the contract, as against the title or interest of McKinlock in the premises; that the contractor should waive any and all right or claim of lien upon the demised premises so far as McKinlock's interest was concerned and would execute waivers of liens as against the interest of the lessor in the premises, the waivers to be furnished McKinlock as soon as any contractor should enter upon the performance of any work or the furnishing of any materials in any case where, in the absence of such waivers, such contractor might claim an interest in or lien upon the premises of the lessor. The building was constructed by the lessees. No question is raised that the completed structure did not fully comply with the requirements of the contract between McKinlock and the tenants. McKinlock took possession of the real estate, the building thereon and all fixtures and appurtenances thereto, on October 31, 1931, and has since remained in such possession. The evidence established the material allegations of· the answer of the Phillips Company, including the contract and its terms as set up in such answer.

The issue here presented is one of first impression in this court. Counsel for neither party have presented any case where fixtures have been installed by a tenant of the leasehold estate under a contract whereby the vendor of such fixtures and the tenant have agreed that the fixtures should remain personal property and the title thereto re-

main in the vendor until such fixtures are fully paid for, and the landlord, by reason of default of the tenant in the payment of the rent, claimed ownership of the fixtures.

Two preliminary questions confront us at the outset of the case: (1) Can personal property retain its identity as such after being attached to real estate; (2) whether title to such personal property can be retained in the vendor by contract between the vendor and vendee where the personal property is attached to the real estate, as against the owner of the real estate.

The early decisions in England, as well as in this country, were very firm in holding that when personal property became a fixture by annexation to the real estate by some permanent method the personal property lost its identity as such and became real estate. The more modern decisions have broken away from this rule and a more liberal construction is now given in favor of holding fixtures personal property where that intent can be gathered from the conduct or actions of the parties. (*Sword* v. *Low*, 122 Ill. 487.) Kent, in discussing the subject of fixtures, states: "The law of fixtures is in derogation of the original rule of the common law, which subjected everything affixed to the freehold to the law governing the freehold, and it has grown up into a system of judicial legislation so as almost to render the right of removal of fixtures a general rule instead of the exception." (2 Kent's Com. 243.) Conditional sales of personal property were good at common law. (*Bierce* v. *Hutchins*, 205 U. S. 340, 51 L. ed. 828.) Prior to the passage of the Uniform Sales act, conditional sales by which the title to the property was reserved in the seller were held by the decisions of this court as being in the nature of secret liens, and constituted constructive fraud as against judgment creditors, mortgagees and purchasers without notice that the title was not in the person in possession of the property. The Uniform Sales act recognizes the validity of conditional sales contracts, and

such contracts have been sustained by this court. *Sherer-Gillett Co.* v. *Long,* 318 Ill. 432; *Dayton Scale Co.* v. *General Market House Co.* 335 id. 342.

The question next arises whether the sprinkler system has lost its identity as personal propery because of the fact that it is bolted and fastened to different portions of the building, or whether it is a trade fixture that can be removed under the contract by which the title was retained in the vendor. *Holt* v. *Henley,* 232 U. S. 678, 58 L. ed. 767, involved the right of the vendor, Holt, where title was retained in him pending the payment in full for the chattel sold, to remove a sprinkler system from an industrial plant. The mortgagees claimed title to the sprinkler system under their mortgage, which was made and recorded before the sprinkler system was installed. The mortgage there created a lien upon the existing manufacturing plant and all property "which may be acquired and placed upon the said premises during the continuance of this trust." The Supreme Court of the United States held that the property could be removed by the vendor under his conditional sales contract. In passing upon that subject the court said: "To hold that the mere fact of annexing the system to the freehold overrode the agreement that it should remain personalty and still belong to Holt would be to give a mystic importance to attachments by bolts and screws." A case which involved the right of a vendor to remove a sprinkler system from hotel property under a conditional sales contract or lease as against a prior mortgagee, where the contract was sustained and the right to remove granted, is *Prudence-Bonds Corp.* v. *1000 Island House Co.* 252 N. Y. Supp. 60. A case involving property in Illinois may be found in *Raymond Co.* v. *Ball,* 210 Fed. (7th C. C. A.) 217. In that case there was an existing mortgage on a brick plant. The vendor, under a written contract reserving title to the presses in the vendor until the purchase price of the machines was paid, delivered to the vendee two brick

presses, each weighing 26,000 pounds. The presses were installed by bolting timbers on which the presses rested to brick foundations erected for that purpose on the dirt floor of the building on the premises covered by the mortgage. The Circuit Court of Appeals held that the presses remained personal property and the vendor could remove the machinery as against the mortgagee, no material injury being done to the building by such removal. Other cases recognizing the validity of conditional sales contracts and the right to remove fixtures as against third parties even though the fixtures are permanently fastened to the realty, where no material injury will be done the premises by such removal, may be found in *Detroit Steel Cooperage Co.* v. *Sisterville Brewing Co.* 233 U. S. 712, 58 L. ed. 1166; *Davis* v. *Bliss,* 79 N. E. (N. Y.) 851; *Best Manf. Co.* v. *Cohn,* 86 Pac. (Cal.) 829; *Harris* v. *Hackley,* 127 Mich. 46, 86 N. W. 389; *Smith* v. *Holland Furnace Co.* 278 Pac. (Kan.) 719; *Holland Furnace Co.* v. *Bird,* 21 Pac. (2d) (Wyo.) 826; *Palmateer* v. *Robinson,* 38 Atl. (N. J.) 957.

The general rule may be deduced from the authorities cited, that where the parties to a contract of sale of personal property in which the title is reserved in the vendor to the chattel sold, agree that by the annexation of such personal property to the real estate the chattel shall not lose its character as personal property, such contract is enforceable between the parties thereto and also against a purchaser or a prior mortgagee, or those occupying similar positions, where the chattel can be removed without material injury to the freehold or the usefulness of the chattel. *Raymond Co.* v. *Ball, supra; Campbell* v. *Roddy,* 44 N. J. Eq. 244, 14 Atl. 279; *Binkley* v. *Forkner,* 117 Ind. 176, 19 N. E. 753.

The lease between McKinlock and the tenants required the lessees to construct a valuable building on the premises as security for the rent to become due McKinlock. This building, under the contract, was not necessarily a

garage building, but the lessees at their option could construct either a garage building, an office building or a building suitable for mercantile purposes. All parties to the lease knew that if a garage were built the city ordinance required that a sprinkler system must be installed. All parties to the leasehold contract must be held to have contracted with reference to the requirements of the city ordinance. By contracting that the lessees should pay the expenses of the sprinkler system the parties to such contract could not bind a person not a party to the contract. The fact that the contract was of record did not bind persons not a party to it to accept its terms. The owner of the freehold not only invited, but required, the tenants to construct an expensive building on his property. The law of this State permitted the plaintiff in error's predecessors to make a contract reserving title in them, as vendors, until the property should be fully paid for. There is nothing in the contract between McKinlock and his lessees that permitted McKinlock, in case of their default, to take the property of which the lessees were not the owners. McKinlock's position is akin to that of a vendor of real estate who contracts for the sale of such real estate to the vendee as against any property that might be placed on the premises by the vendee during the life of the contract and before the purchase price was fully paid. In such case, where the legal title has not passed to the vendee as to fixtures and improvements affixed to the real estate, the subject matter of the contract, the vendor is held to be an equitable mortgagee. (*Harris* v. *Hackley, supra.*) The sprinkler system here was not an integral part of the building required for the successful operation of the building but was merely a device required by a city ordinance as a safety measure for the protection of the lives and property of the public. The evidence shows that the sprinkler system can be removed without material injury to the building or to the system.

It is argued by the defendant in error that he occupies the position of a subsequent third party, as a purchaser of the property without notice of the agreement by which the Phillips Company retained title to the sprinkler system. This position of the defendant in error is not tenable. It is axiomatic that a party cannot transfer a better title than he has. As between the tenant and the lessor the contract between them was enforceable. Because of the fact that the tenant defaulted in the terms of his lease and the landlord took possession of the ground, with the building thereon, does not constitute him a purchaser without notice of the rights of the Phillips Company. He succeeded to the rights of the tenant in the building because it was part of the real estate, but he did not succeed to the property in question, inasmuch, as between the lessor and lessee, it retained its status of personal property. McKinlock could not and did not acquire any greater title to the personal property than his tenant had.

The tenant was not the owner of the sprinkler system. It did have a special, equitable property right therein to the extent that it had paid installments of the rental as provided by its contract with the Phillips Company, and which special, equitable property right would, upon payment of the whole of the installments, ripen into an absolute ownership of the system. McKinlock advanced no money to the tenants on the strength of this sprinkler system. He has lost nothing by reason of its installation. True, by his contract he provided that a building might be erected by the tenants, which he knew, under an ordinance of the city, required a sprinkler system, and the contract between him and his tenants provided that they should pay the cost of the building and improvements. But the contract neither required that all cash should be paid for materials or fixtures, nor did it prohibit the tenants from purchasing property for installation in the building on a conditional sales contract, with title in the seller until the

property was paid for in accordance with the terms of the conditional sales contract. The fact that the tenants did not pay for the sprinkler system, which they never owned, does not by any legal legerdemain penalize the plaintiff in error to the extent of taking from it its property and giving it to the defendant in error.

It is next argued that the plaintiff in error is estopped from asserting title as against the defendant in error. To sustain this claim McKinlock relies upon section 23 of the Uniform Sales act. (Cahill's Stat. 1933, chap. 121a, par. 26, p. 2466; Smith's Stat. 1933, chap. 121½, p. 2559.) That section provides, in substance, that where goods are sold by a person not the owner thereof and who does not sell them under the authority of or with the consent of the owner, the buyer acquires no better title to the goods than the seller has, "unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell." Reliance is made by McKinlock particularly on the quoted clause of section 23. He urges that the Phillips Company by its conduct is precluded from claiming title to the property as against him. The doctrine of estoppel can only be invoked to prevent injustice or fraud. There can be no estoppel where there is no loss, injury or damage. (*Zurich Accident Ins. Co.* v. *Industrial Com.* 325 Ill. 452.) The Phillips Company did nothing to lead McKinlock to believe that the property was paid for and that the title was in his tenant. Moreover, McKinlock is not a buyer of the property and neither was his tenant a seller of it, and the provisions of section 23 whereby an owner of goods may be precluded by his conduct from denying the seller's authority to sell has no application to the case at bar.

It is next urged by the defendant in error that the plaintiff in error's remedy was under the mechanic's lien statute of this State. The defendant in error by his contract specifically provided that the freehold estate should not

be subject to mechanics' liens, under the statute, for any material or supplies furnished in the construction of the building. Whether this provision of the contract is binding is not necessary to decide in this case. However, the defendant in error by writing these provisions against mechanics' liens into his contract with his tenants is in no position in a court of equity now to urge that notwithstanding such contract the remedy of the plaintiff in error was by a mechanic's lien proceeding against the freehold estate owned by him. The plaintiff in error was entitled to remove the sprinkler system from the building at the time of the making of its demand for that purpose. The evidence clearly establishes that McKinlock has converted the sprinkler system to his own use.

There remains in the case only the question of the amount of damages for which the plaintiff in error shall have a decree against McKinlock. It is contended by the plaintiff in error that it is entitled to a money decree against McKinlock for the balance due, with interest on the purchase price of the sprinkler system. We do not agree with that contention. McKinlock is not liable upon the contract between Phillips & Co. and the Wells-Jackson Corporation for the balance of the purchase price, but his liability to the plaintiff in error is because of his conversion of the property of the plaintiff in error. The measure of damages for conversion of personal property is the value of the property at the time of the conversion. *Janeway* v. *Burton,* 201 Ill. 78; *Drain* v. *LaGrange State Bank,* 303 id. 330.

Upon the re-docketing of the cause in the superior court that court will hear evidence and determine the value of the sprinkler system at the time of its conversion by McKinlock, and will enter a decree against him requiring him to pay the value of such system at the time of such conversion, with interest at the legal rate, with costs.

The judgment of the Appellate Court for the First District and the decree of the superior court of Cook county are each reversed and the cause is remanded to the superior court of Cook county, with directions to proceed in harmony with the views expressed in this opinion.

*Reversed and remanded, with directions.*

Mr. JUSTICE SHAW, dissenting:

I find it impossible to concur in the view of the majority of the court and think it necessary to briefly state my reasons.

The trial court in this case by its decree found that the sprinkler system was an integral part of the building, was required by the plans and specifications, and also necessary by ordinance of the city of Chicago. That court also found that the contractors who installed the sprinkler system had notice of the provisions of the ninety-nine year lease and of the plans and specifications laid down by the owner of the property. It was also found as a fact that there had been no demand for, and therefore no conversion of, the sprinkler system; also, that McKinlock had no notice or knowledge of the attempt to reserve title, and further, that such reservation of title or secret lien amounted to a fraud on McKinlock.

The ninety-nine year lease provided that as security for the rent, and in consideration of being given permission to destroy the existing building on the premises, the lessee should build the garage here in question at a cost of not less than $600,000, which building should be in accordance with plans and specifications approved by the parties. It further appears that these plans and specifications did include the sprinkler system in question, were submitted to the lessor and approved by him. Phillips, of the Phillips Company, admitted in his testimony that he knew McKinlock had a bond protecting him against mechanics' liens

and guaranteeing completion of the building in accordance with the specifications and plans.

My disagreements with the result arrived at in this case do not arise from attaching any mystic significance to bolts and screws but solely from a consideration of the relationship of the parties. I can see no objection to allowing the intention of the contracting parties to control the question of whether or not a movable article becomes a fixture so long as the rights of others are not involved. On the other hand, when the rights of others are involved, I think we must consider not only the method of attachment of the movable article to the real estate but also its character, usefulness and purpose. In a transaction such as this, where there are three parties, the intention of two of them should not be allowed to control to the detriment or damage of the third party; and this is especially true where that intention is secret, and actually does, as in this case, or may if put into general use, result in fraud.

In most, if not all, of the cases relied upon in the majority opinion the holding is based on two principles: (1) That no hardship resulted to the owner of the fee; and (2) that the contract between the parties showed on its face that the owner of the fee in some way acquiesced. It is quite obvious that when a mortgagee takes property as security he is presumed to be satisfied with the security as taken, and that there is no particular hardship in allowing the withdrawal of subsequently attached movables if that be in accordance with the intention of the second and third parties. The same is true as to those cases which are cited involving the annexation of chattels subsequent to the execution of an ordinary lease or an installment sale contract.

If the sprinkler system here in question had merely been added to the building on the premises when McKinlock made his lease, as a pure gratuity, I would have no great difficulty in concurring with the majority. This,

however, is not the fact. The situation here is, that Mc-Kinlock consented to the tearing down of a building on the premises when he leased it, upon consideration that in place of it, and as security for his rent, the lessee would erect a new building according to certain specifications, including a sprinkler system. This, to my mind, completely changes the relationship of the parties and places them in an entirely different one. In my opinion the parties to this litigation stand in the relation to each other of owner, general contractor and sub-contractor. McKinlock is the owner of the fee, the Wells-Jackson Corporation by the provisions of the lease becomes a general contractor to erect the building, and the Phillips Company becomes a sub-contractor for the sprinkler system. For the sub-contractor and the general contractor to attempt to reserve a secret lien of any kind, contrary to the plain provisions of the Mechanics' Lien law, is, in my opinion, fraudulent, and was so found by the trial and Appellate Courts. The record discloses that the owner required waivers of a mechanic's lien and took a personal bond protecting him against any such liability. This was all he could do and certainly all he was required to do. It is my opinion that if we adopt any other view of the situation we are laying ourselves open to serious possibilities.

As an illustration, if we hold that a sprinkler system under these circumstances remains personal property under a secret lien and fail to attach any "mystic significance to bolts and screws," it is hard to see any point at which the line may be drawn. If a sprinkler contractor can retain a secret lien merely because his system can be readily removed by taking out a few bolts and screws, there is no logical reason why the same rule should not apply to other sub-contractors. The marble contractor might come in and by the removal of a few bolts and screws take out all the wainscoting, all the stair treads and all of the partitions and wash-rooms. The plumber might come in and remove

the wash-stands, the bath tubs, the toilets and all exposed pipes. The electrical contractor might remove all electrical fixtures and pull out all such wires as were enclosed in conduits. The elevator contractor might remove the cages from the shafts, the dynamos from their foundations, the cables, and all removable control equipment. The heating contractor might remove the radiators, the boilers, the vacuum pumps, and whatsoever else might be detached by the removal of bolts and screws. In this way the various sub-contractors might completely strip a building of everything but its bare walls, and all of this might happen through secret liens, disregarding the Mechanics' Lien laws, and thereby leave an owner who had contracted for the improvement of his property entirely unprotected.

Although it is lawful for an owner to contract that an improvement shall be completed free from liens and that no mechanics' liens shall attach, and although it has been held that such an agreement is binding not only upon the contractor but upon his sub-contractors, the necessary effect of this opinion will be to leave the way open for the imposition of such liens secretly and over an indefinite period of time far beyond the limits for making claim imposed by Mechanics' Lien laws for the protection of an owner. It is conceivable that many contractors would prefer this secret form of lien if it is validated by this court. It might even be conceived that a heating contractor would prefer a secret lien on the boilers to any security given him by the Mechanics' Lien laws. If he could come in and replevin the boilers in the middle of a cold winter in case of failure to pay his bill, it is apparent he would have a much more powerful remedy than by a mechanic's lien suit. It is not necessary to multiply such illustrations, because the point is obvious.

It is also to be noted that the trial and Appellate Courts found as a matter of fact that there had been no demand

made for this property, and therefore no conversion of it if it is held to be personal in its nature.

I think this opinion overlooks the entire line of authorities applicable to the relation of owner, contractor and subcontractor. It would unnecessarily extend this dissent to cite those cases, but one of them in point is *Allis-Chalmers Manf. Co.* v. *City of Atlantic,* 164 Iowa, 8, Ann. Cas. 1916-D, p. 910, 144 N. W. 346.

DeYoung and Farthing, JJ., also dissenting.